No. 92,700

J. MICHELLE JOHNSON and ALAN L. JOHNSON, *Plaintiffs/Garnishors/Appellees/Cross-Appellants,* v. WESTHOFF SAND COMPANY, INC., *Defendant,* v. MID-CONTINENT CASUALTY COMPANY, *Garnishee/Appellant/Cross-Appellee.*

(135 P.3d 1127)

Opinion filed June 9, 2006.

*James R. Borthwick*, of Blackwell Sanders Peper Martin LLP, of Kansas City, Missouri, argued the cause, and *Brian D. Martin,* of the same firm, was with him on the briefs for appellant.

*Rex A. Sharp,* of Gunderson Sharp & Walke, L.L.P., of Prairie Village, argued the cause, and *Barbara C. Frankland,* of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

NUSS, J.: This case involves a dispute over the amount of attorney fees and expenses assessed against an insurance company under K.S.A. 40-256. The district court's assessment against Mid-Continent Casualty Company (Mid-Continent) in the underlying garnishment action was based in part upon the Johnsons' contingent fee agreement with their counsel which established fees of 33% of any amount recovered through a settlement or trial judgment. The court also made an assessment against Mid-Continent in the accompanying dispute over the specific amount of attorney fees for which the Johnsons asserted an entitlement, *i.e.*, "fees for fees" were awarded the Johnsons.

Mid-Continent appeals the Court of Appeals' decision affirming the district court on these and other issues. The Johnsons appeal the Court of Appeals' rejection of their argument that they were entitled to attorney fees of 40% from Mid-Continent, as contemplated by their fee agreement's appeal provision.

The issues on appeal, and this court's accompanying holdings, are as follows:

1. Did the district court abuse its discretion in determining the amount of attorney fees awarded for the underlying garnishment action? No.
2. Did the district court err under the "law of the case" doctrine in considering the contingent fee agreement? No.
3. Did the district court abuse its discretion in the amount of attorney fees awarded for the attorney fee litigation, *i.e.*, fees for fees? No.
4. Did the district court err in awarding expert witnesses' fees and expenses under K.S.A. 40-256? Yes.

Accordingly, we affirm in part and reverse in part.

## FACTS

In June 1992, Michelle Johnson, her husband Alan Johnson, and their children (the Johnsons) were involved in an automobile accident with a semi-tractor trailer in a construction zone. Michelle lost her dominant right arm below the elbow as a result. Thereafter, the Johnsons retained counsel to file a personal injury lawsuit under a contingent fee agreement in which they agreed to pay their

attorney 33% of any recovery through settlement or trial judgment and 40% in the event of an appeal.

The Johnsons filed suit against several parties, including Westhoff Sand Company (Westhoff). Although Westhoff was personally served, it did not inform its insurance carrier, Mid-Continent Casualty Company, of the lawsuit. The Johnsons' attorney notified Mid-Continent by telephone when he discovered that it insured Westhoff.

Despite numerous attempts, Mid-Continent was unsuccessful in contacting Westhoff. Ultimately, Mid-Continent failed to defend Westhoff in the lawsuit. After all the other defendants settled, the Johnsons obtained a default judgment against Westhoff on February 1, 1995, in the principal amount of $2,268,784.52.

The Johnsons contended that Westhoff's insurance policy with Mid-Continent provided coverage and sought to recover the full amount of the default judgment and attorney fees from Mid-Continent. In February 1997, 2 years after obtaining their default judgment against Westhoff, they instituted a garnishment action against Mid-Continent to collect on their judgment. Mid-Continent denied coverage because of Westhoff's failure to give notice and failure to cooperate with Mid-Continent in the proceedings.

After discovery, a court trial, and reconsideration, Mid-Continent was found liable and its coverage defense was held to be "without just cause or excuse" under K.S.A. 40-256. In August 2001, the district court concluded that the Johnsons were entitled to collect from Mid-Continent the entire amount of the default judgment: approximately $3.6 million in principal and interest. The district court also awarded attorney fees in the amount of $1,202,336.65, which was approximately 33⅓% of the judgment.

Mid-Continent appealed. On February 7, 2003, the Court of Appeals affirmed the default judgment, but remanded for the district court to conduct a full hearing and consider all factors listed in KRPC 1.5(a) (2005 Kan. Ct. R. Annot. 397) to determine the appropriate amount of attorney fees. *Johnson v. Westhoff Sand Co. (Johnson I)*, 31 Kan. App. 2d 259, 275, 62 P.3d 685, *rev. denied* 275 Kan. 964 (2003). On February 5, 2003, it also awarded the

Johnsons $12,000 in attorney fees and $282.96 in expenses they incurred on appeal.

After the parties' petitions for review and Mid-Continent's request to stay execution were denied, the district court entered a journal entry of judgment after appeal of $3,993,066.91—the amount of the judgment affirmed by the Court of Appeals, plus interest. Mid-Continent paid the judgment on June 6, 2003.

On November 3, 2003, the Johnsons filed a motion with the district court to determine the amount of attorney fees awarded under K.S.A. 40-256. The court held an evidentiary hearing at which experts testified, exhibits were submitted, and counsel presented oral argument. The trial testimony generally reflected that as the complexity of the case increased, so would the contingent fee percentage or hourly rate, depending on the fee agreement.

The Johnsons submitted the following evidence to the district court.

(1) a work history summary of the case from the time of default judgment to the time of collection, February 1, 1995, through June 6, 2003;

(2) an August 12, 2003 letter from Rex Sharp (Johnsons' counsel) to James Borthwick (defense counsel) stating the approximate time spent on the garnishment action through the appeal, showing a total of 748.5 hours before the appeal, and another 270 hours on appeal until collection;

(3) the July 16, 1992, contingent fee agreement between the Johnsons and their counsel showing a 33% fee at or before trial and 40% on appeal, plus expenses;

(4) the executed summary sheet by the Johnsons' counsel detailing expenses and net fees incurred on the judgment collected from Mid-Continent, showing the Johnsons paid their counsel pursuant to the contingent fee agreement $1,595,080.21 in fees, *i.e.*, 40% of the judgment, and $5,360.38 in expenses, totaling $1,600,440.59.

(5) an affidavit from the Johnsons' counsel affirming the exhibits entered and stating that attorney liens and reimbursement agreements to all prior law firms had been satisfied in full;

(6) expert affidavits from attorneys David Morris, Jacob Graybill, David Rebein, Lee Thompson, W. Greg Wright, Grant Shellenberger, Fritz Edmunds, Jr., and Michael Whitsitt in support of the reasonableness of the contingent fee agreement and the resulting fee in the case;

(7) an expert fee invoice of witness David Morris, totaling $5,423.60;

(8) an expert fee invoice of witness Jacob Graybill, totaling $4,712.50;

(9) additional time and expenses incurred by Johnsons' counsel through March 26, 2004, totaling 130.9 hours, and $6,005.07 in expenses; and

(10) the supplemental time and expenses incurred at trial.

The evidence indicated that as a contingency fee case, the Johnsons' counsel did not keep detailed time records during a portion of the suit. Therefore, some of the time spent on the case was estimated. For other times, however, detailed records were kept.

In response, Mid-Continent submitted stipulations from Johnsons' counsel, expert affidavits from attorneys Douglas Lancaster and Lee Smithyman, and an annotation of K.S.A. 40-256 cases prepared by Smithyman. In his affidavit, Lancaster asserted, based upon his extensive commercial litigation experience, that a total of $111,480.00 in attorney fees was appropriate based on hourly rate computations:

"(a) For lead counsel Rex Sharp: 439 hours at $200 per hour  $87,800.00
"(b) Associates time: 140 hours at $150 per hour  $21,000.00
"(c) Paralegal time: 28 at $60 per hour  $ 1,680.00
**"Total Attorneys' fees to be awarded:**  **$111,480.00"**

Similarly, Smithyman's affidavit suggested that based on a local hourly rate for attorneys of Sharp's skill and experience, appropriate attorney fees would be between $85,000 and $102,600.

On May 21, 2004, the district court awarded the Johnsons $1,329,233.51 in attorney fees and $5,360.38 for expenses incurred in litigating the original garnishment action. The district court's award is 33⅓% of the judgment entered on remand ($3,993,061 - $5,360.38 in expenses.)

The district court also awarded the Johnsons an additional $51,580.00 in attorney fees plus $13,802.78 for expenses incurred in their having to litigate the specific amount of attorney fees to be awarded on remand (eventually $1.3 million). In other words, it awarded "fees for fees." The court rejected the Johnsons' version of fees for fees: $533,000, *i.e.*, approximately one-third (pre-appeal) of the $1.6 million in attorney fees to which they argued they were entitled pursuant to their contingent fee agreement—and which they had paid to their counsel—on the garnishment action.

Finally, the district court denied the Johnsons' separate request for fees and expenses they incurred for appellate work in *Johnson I*, effectively holding that the Court of Appeals had already compensated them with the award of $12,000 in fees and $282.96 expenses.

Mid-Continent appealed the amount of the awards to the Court of Appeals, and the Johnsons cross-appealed, both asserting that the district court abused its discretion in assessing attorney fees and expenses. The Court of Appeals affirmed the district court's decision on both the appeal and cross-appeal. *Johnson v. Westhoff Sand Co. (Johnson II)*, No. 92,700, unpublished opinion filed June 24, 2005. It later denied the Johnsons' request for attorney fees and expenses incurred for their appellate work in *Johnson II.*

We granted both parties' petitions for review. After oral arguments to this court, the Johnsons filed a motion for attorney fees and expenses they incurred for all appellate work in *Johnson II, i.e.*, to the Court of Appeals and to this court.

## ANALYSIS

Because of the quantity, and sometimes inconsistency, of numbers appearing throughout this litigation, an overview is helpful before discussion. The contingent fee agreement states in relevant part:

"3. The following percentage of the amount recovered after deducting expenses is to be paid by the clients . . . to the attorney as reasonable compensation for the legal services rendered:
33% of all amounts recovered by compromise or settlement or by any judgment resulting from a trial; 40% if the case is appealed or retried.

4. . . . Attorney will advance all expenses to clients, and, if a recovery is made, deduct the expenses from the total recovery first before calculating the legal fee.

5. If the case is tried to a jury or court (or appealed) and attorneys' fees are finally awarded in addition to damages, the attorneys' fees awarded will be used to pay the amount owed by the clients under paragraph three and four. Any shortfall shall be paid by the clients and any overage shall be paid to the client, if permitted by law."

Although the agreement states 33%, the Johnsons often substitute 33⅓% in their arguments, presumably from calculation of the district court's award.

The parties' positions are summarized as follows:

## 1. Attorney fees for the underlying garnishment proceeding:

For the Johnsons' trial and pretrial work, Mid-Continent argues the district court's May 21, 2004, award of $1,329,233.51 in attorney fees for litigating the underlying garnishment action is too high and should be reduced to approximately $95,000.

The Johnsons respond that the award should be affirmed because it follows the contingent fee agreement for recovery through a trial judgment, 33⅓%.

For the Johnsons' appellate work, Mid-Continent argues that the Court of Appeals on February 5, 2003, has already awarded $12,000 in fees for the underlying garnishment action, *i.e.*, *Johnson I.*

The Johnsons respond that the Court of Appeals' $12,000 award should be reversed and this court should instead award fees of $266,666.67 for their appellate work in the garnishment action. Their fee figure is the product obtained by multiplying the default judgment amount (approximately $4 million in principal and interest) times 6⅔%—the difference between their purported entitlement under the fee agreement of 33⅓% of the amount of recovery through trial judgment (which the district court awarded) and their 40% purported entitlement after appeal, *i.e.*, through their work in *Johnson I.*

Under the Johnsons' arguments, properly awarded fees and expenses would approach $1.6 million, the amount they actually paid their counsel pursuant to their fee agreement. Accordingly, they

claim that their resolution will "make them whole" on the issue of attorney fees and expenses for all trial and appellate work arising out of the garnishment action.

2. Fees for fees:

For the Johnsons' trial and pretrial work in litigating the amount of attorney fees, Mid-Continent argues that the district court's May 21, 2004, award of $51,580 in fees is too high and should be reduced to approximately $20,000.

The Johnsons respond that the district court award is too low; this court should reverse and award fees of $375,000. Their fee figure is the product obtained by multiplying two figures. First, the "attorney fee judgment amount" (the $1.5 million "at risk"—the difference between the $1.6 million which the Johnsons claim is their fee entitlement under the fee agreement and the approximate $100,000 Mid-Continent argues is a reasonable fee for the garnishment action). Second, 25%, instead of the fee agreement's 33⅓% of the amount of recovery through trial judgment. The Johnsons are willing to accept this discount because of their acknowledged "reduced risk" on the attorney fees litigation.

For the Johnsons' appellate work in the attorney fee litigation, Mid-Continent argues the Court of Appeals correctly denied attorney fees after its decision in *Johnson II.*

The Johnsons respond that the Court of Appeals' denial of their appellate fees for litigating the amount of attorney fees should be reversed. They argue this court should instead award fees of $100,000 for all of their appellate work on the fees issue. Their figure is the product obtained by multiplying two figures. First, the "attorney fee judgment amount" (the $1.5 million "at risk"). Second, 6⅔%; once again, the fee agreement's stated differential between the percentage of the amount of recovery through trial judgment (33⅓) and the percentage of the amount of recovery through appeal (40).

3. Expert witnesses' fees and expenses:

Mid-Continent argues that the district court's May 21, 2004, expense award to Johnsons for litigating the amount of attorney

fees at trial, $13,802.78, is too high and should be reduced by the amount paid to expert witnesses—$10,136.10. The Johnsons argue the full amount was properly awarded.

Issue 1: *Did the district court abuse its discretion in determining the amount of attorney fees awarded for the underlying garnishment action?*

Greatly summarized, Mid-Continent argues that the district court should have considered the Johnsons' fee agreement only for the purpose of establishing employment of their counsel and the reasons why counsel was employed. It appears to argue alternatively that if the agreement is to be considered in the fee determination, then the amount computed under the agreement can prevail only if it is reasonable; a reasonable fee is determined by calculating a reasonable number of hours at a reasonable rate. Based upon its own calculations, a reasonable attorney fee is approximately $95,000.

On the Johnsons' cross-appeal, also greatly summarized, they argue that the amount of fees should be awarded in accordance with their fee agreement, *i.e.*, 40% of the nearly $4 million judgment because the garnishment judgment was appealed. They claim entitlement to approximately $1.6 million—the amount they paid their counsel—and they want to be made whole.

*Standard of review*

Mid-Continent argues that resolution of the issue necessitates statutory interpretation and that de novo review is appropriate. However, it argued to the Court of Appeals that an abuse of discretion standard applied. Johnsons submit that the latter standard applies.

We agree that in Kansas, attorney fees cannot be awarded absent statutory authority or agreement. *Gaslight Villa, Inc. v. City of Lansing*, 213 Kan. 862, 873, 518 P.2d 410 (1974). Here, authority is provided under K.S.A. 40-256:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201 . . . if it appear[s] from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment

*shall allow the plaintiff* a *reasonable sum as an attorney's fee* for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs." (Emphasis added.)

While the awarding of attorney fees is mandatory, the *amount* of such an award is within the sound discretion of the district court and will not be disturbed on appeal absent a showing that the district court abused that discretion. *Link, Inc. v. City of Hays,* 268 Kan. 372, 381, 997 P.2d 697 (2000). Discretion is abused only where no reasonable person would take the trial court's view. *State ex rel. Stovall v. Alivio,* 275 Kan. 169, 173, 61 P.3d 687 (2003). The burden is on the party alleging the abuse. *State v. Sanchez-Cazares,* 276 Kan. 451, 454, 78 P.3d 55 (2003).

We additionally observe that a district court is considered an expert on the issue of attorney fees. *Link, Inc.,* 268 Kan. at 382. It "may apply its own knowledge and professional experience in determining the value of services rendered. [Citation omitted.]" *Service v. Pyramid Life Ins. Co.,* 201 Kan. 196, 221-22, 440 P.2d 944 (1968). Moreover, "[a]ppellate courts are also experts on the reasonableness of attorney fees. However, we do not substitute our judgment for that of the district court on the amount of the fee unless 'in the interest of justice' we disagree with the district court. [Citations omitted]." *Link, Inc.,* 268 Kan. at 383.

## Discussion

In determining the reasonableness of an attorney fee, *e.g.,* as set forth in K.S.A. 40-256, the factors in Rule 1.5(a) (2005 Kan. Ct. R. Annot. 397) of the Kansas Rules of Professional Conduct should be considered. *City of Wichita v. BG Products, Inc.,* 252 Kan. 367, 374, 845 P.2d 649 (1993). The rule provides:

"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) *whether the fee is fixed or contingent.*" (2005 Kan. Ct. R. Annot. 397.) (Emphasis added.)

In awarding attorney fees under K.S.A. 40-256 on remand for the garnishment action, the district court examined these factors and stated:

"The first factor is 'the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.' Counsel for plaintiff-garnishor points out he spent 1,018.5 hours on the garnishment process whereas *counsel for the garnishee points out 170 of those hours related to the appeal and that the garnishor moved for allowance of a fee on appeal and was awarded $12,000. Under the circumstances it appears more reasonable and better practice to omit factors on appeal from consideration.*

"This Court observes that substantial and significant labor was involved in this garnishment notwithstanding that the underlying action resulted in default judgment and notwithstanding that to a large extent this garnishment proceeded on stipulated facts. This was a coverage defense raising issues of non-cooperation, notice of loss, opportunity to investigate, failure to give timely notice of loss and whether the insurance company's refusal to pay was without just cause or excuse. These issues were fully developed and forcefully litigated on both sides and garnishee Mid-Continent was represented by a substantial law firm of great skill, experience and resources. It was the determination of the applicable law and its application to and legal effect on the stipulated facts which was the controversy and the focus of the resulting work.

"The questions were not novel, but they were difficult. The determination of the applicable legal principles and the results of the application were thoroughly and forcefully presented and controverted through out the proceedings.

"The skill requisite to perform the legal services was substantial. While garnishment is largely controlled by statute it does not follow that this garnishment proceeding did not require high professional skills and abilities. The garnishment procedure was not the issue, what was at issue were the inferences to be drawn and the legal conclusions relating to insurance coverage and the duty to defend together with the applicable principles of law. Federal cases, Kansas cases and cases from other jurisdictions were all relied on. The Court also notes the ongoing and continuing dedication and commitment required.

"The second factor to be considered is 'the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.' The Court does not believe this is a significantly applicable consideration. When the plaintiffs' counsel undertook the personal injury action that acceptance of employment may have precluded other employment but not likely

the present garnishment. On the other hand it is common knowledge that the longer a case goes on the more other business it precludes. *Farmco, Inc. v. Explosive Specialists, Inc.*, 9 Kan. App. 2d 509, 517, 684 P.2d 436 (1984). From that point of view it is appropriate to consider.

"The third consideration is the fee customarily charged in the locality for similar legal services. The Court notes a contingent fee contract is customary in this locality as well as others in garnishment actions. See, *e.g. Farmco, Inc. v. Explosive Specialists, Inc.*, supra at 517. Likewise, it is fair and accurate to say that a fee of one-third is not only reasonable but customary in this locality as well as many others.

"The fourth consideration is the amount involved and the results obtained. It cannot be seriously questioned but that the amount involved is significant—almost four million dollars and the results obtained namely payment of the full judgment with interest is not only a substantial, but also an excellent, result. The stakes were high in terms of the amount involved, the physical injuries, and the end to be served with maximum recovery.

"The fifth consideration is the time limitation imposed by the client or by the circumstances. The Court does not believe that this is a significant factor in determining a reasonable sum as a fee.

"The sixth item is the nature and length of the professional relationship with the client. In terms of the garnishment proceeding which is before the Court this process is one step of a much longer professional relationship with the Johnsons and their attorney and one part of a professional relationship which calls upon the attorney to be available to counsel and advise on many aspects of health and financial problems experienced by a family tragically and significantly injured such as this.

"The seventh factor is the experience, reputation and ability of the lawyer or lawyers performing the services. The Court notes that counsel for the garnishor-judgment creditor is well known to the Court, enjoys an outstanding professional reputation, is rated in Martindale-Hubbell as a V and has been a civil trial and appellate lawyer for seventeen years. The Court notes Exhibit S, the Martindale-Hubbell listings of lawyers Sharp, Schimmel and Matula.

"The eighth factor is whether the fee is fixed or contingent. The agreed fee contracted for by plaintiff and their lawyer is contingent, not fixed. A contingent fee arrangement is customary in personal injury cases, as well as proceedings to collect the damages awarded. *Although appropriate to consider, the fee arrangement is not controlling or dispositive in determining what is a reasonable sum under K.S.A. 40-256.*

"The fee contract, Garnishor's Exhibit D, does not specify the work to be done by the attorney, but its paragraph 7 gives the attorney 'the exclusive right to take all legal steps to enforce said claim . . . .' The Court finds this anticipates efforts by the lawyer to collect the damages, including the use of garnishment, as a part of the lawyer's duty and service under the contract." (Emphasis added.)

After considering all of the applicable factors, and acknowledging that the fee arrangement is not controlling or dispositive in determining what is a reasonable sum under K.S.A. 40-256, the court awarded attorney fees for the trial and pretrial work in the garnishment action of $1,329,233.51.

In asserting the district court erred in its consideration of the contingent fee agreement, Mid-Continent principally relies upon *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 366 P.2d 219 (1961). There, a disability insurer terminated the benefits of its insured. After suit was filed, the insurer settled; however, the issue of whether the insurer violated K.S.A. 40-256 and was thus liable for attorney fees was reserved for determination by the court. 188 Kan. at 700, 705. After determining that the insurer violated the statute, the district court awarded $7,500 in attorney fees to the insured. On appeal, this court stated:

> "The statute (40-256, supra) provides for the allowance of a *reasonable sum* as an attorney fee to be recovered and collected as part of the costs. It does not contemplate an amount in the nature of a speculative or contingent fee conditioned on winning the case, but only a reasonable fee for the appellee to pay his attorney for prosecuting the case." 188 Kan. at 713.

Mid-Continent particularly emphasizes the *Wolf* court's quotation from Appleman, Insurance Law and Practice: " 'It is essential, however, that such allowance be a reasonable one. *It should never be based on a contingent contract, such as might exist between the claimant and his attorney, but would be a reasonable fee for the services actually performed.*' " (Emphasis added.) 188 Kan. at 713 (quoting 3 Appleman, Insurance Law and Practice, §1646, pp. 241-42). The court ultimately determined that the district court's award was reasonable: "[v]iewing the record here presented in such capacity, this court is of the opinion that a fee allowance *to the appellee* for the services of his attorneys in the sum of $7,500 is reasonable." 188 Kan. at 715.

In *Johnson II,* the Court of Appeals opined that the quoted *Wolf* language was inapplicable to the instant case:

> "*Wolf* predates the adoption of the Kansas Rules of Professional Conduct, which we specifically mentioned in the body of the *Johnson I* opinion as providing the

standards to be considered with respect to attorney fees. 31 Kan. App. 2d at 275."
*Johnson II*, slip op. at 6.

Mid-Continent argues, however, that the Court of Appeals discussion in *Johnson II* of the "new" Rule 1.5 does not necessarily support that court's result. It points out that although the Kansas Rules of Professional Conduct did not exist at the time of *Wolf*, a similar resource was then in place -the Canons of Professional Ethics. See *State ex rel. Anderson v. Stice*, 186 Kan. 69, 72, 348 P.2d 833, *cert. denied* 364 U.S. 823 (1960). Those canons provided that "the contingency or the certainty of compensation as one of the permissible factors [should] be considered." *Wolf*, 188 Kan. at 714. Mid-Continent argues that despite the *Wolf* acknowledgment of the canons, the court nevertheless stated that it "would be erroneous . . . for the trial court to consider the contingent fee contract for any reason other than to establish the employment of counsel and the purpose for which counsel were employed." 188 Kan. at 714.

*Johnson II* also discussed *Wolf* in light of recent case law:

"[T]he language of *Wolf* has been tempered by subsequent Supreme Court case law. For example, in *Hawkins v. Dennis*, 258 Kan. 329, 349-50, 905 P.2d 678 (1995), the court essentially enforced a contingent fee contract. See also *Service v. Pyramid Life Ins. Co.*, 201 Kan. 196, 221, 440 P.2d 944 (1968), where the court affirmed the assessment of attorney fees in a case in which the trial court considered a contingent fee contract along with other relevant information." *Johnson II*, slip op. at 6.

In *Hawkins*, as in the instant case, this court considered the reasonableness of an attorney fee assessed against an insurance company under K.S.A. 40-256 in a garnishment action arising out of a motor vehicle accident. After expressly "[c]onsidering, among other things, the contingency fee agreement, the amount of the recovery, and the time involved in this case," this court ultimately reduced the district court's award of attorney fees from $316,576.43 to $189,945.86. 258 Kan. at 349-50. This lower figure equated, per the contingent fee agreement, to 40% of the judgment entered in the garnishment proceeding.

Mid-Continent attempts to distinguish *Hawkins,* arguing that *Hawkins* is limited to its facts based on "appalling breaches of the discovery rules . . . by defense counsel . . . . The Court's award of attorney's fees in *Hawkins* was at least in some measure *punitive* and perhaps designed to send a message to the bar. Those facts do not exist here."

Contrary to Mid-Continent's assertions, *Hawkins* was not limited to appalling breaches of discovery, and nothing in the opinion suggests that this court was attempting to "send a message to the bar." Indeed, this court reduced the fees from approximately 66.67% of the judgment to 40% after considering the fee agreement which called for just such a mathematical calculation.

Similarly, in the other case cited by the Court of Appeals, *Service v. Pyramid Life Ins. Co.,* 201 Kan. 196, 440 P.2d 944 (1968), the district court awarded $6,500 as a reasonable attorney fee under K.S.A. 40-256 when an insurer refused without just cause or excuse to pay the full amount of insurance money due plaintiff. 201 Kan. at 220-21. In reviewing the district court's award, this court stated: "[i]n reviewing the matter we adhere to the rules heretofore stated in *Wolf.*" 201 Kan. at 222. Nevertheless, the *Service* court upheld the fee allowance to appellee's counsel under K.S.A. 40-256 by the trial court which acknowledged "that the provisions of any contingent fee contract between the appellee and her counsel should not be enforced against the insurance company under the provisions of the statute, but that *there was nothing to prevent the court from considering the terms of such contingent fee contract in making its determination as to a reasonable fee in a case of this kind."* (Emphasis added.) 201 Kan. at 221. Although *Service* did not stray from the position asserted in *Wolf* as much as *Hawkins,* it did help set the stage for *Hawkins* and other cases.

In other cases subsequent to *Wolf,* contingent fee agreements have been considered in the calculation of attorney fees. In *City of Wichita v. Chapman,* 214 Kan. 575, 521 P.2d 589 (1974), the district court awarded attorney fees under K.S.A. 26-509, a condemnation statute. On appeal, this court reduced a 45% contingent fee agreement to 33% based on the KRPC 1.5 factors. In considering *Wolf's* application to the case, this court clearly stated: "[t]he

appellant argues that under *Wolf*, . . . the trial court could not consider the contingent fee contract as an element in determining the allowance of attorney fees. *We do not agree."* 214 Kan. at 587. (Emphasis ·added.)

Mid-Continent contends that *Chapman* is distinguishable because it involves a condemnation statute. It argues that an exception exists in condemnation cases, citing *Board of Sedgwick County Comm'rs v. Kiser Living Trust,* 250 Kan. 84, 107, 825 P.2d 130 (1992), which states:

"*Usually a trial court may not consider a contingent fee contract in determining the amount of attorney fees to be awarded a litigant. Wolf v. Mutual Benefit Health* . . . . However, there is an exception in eminent domain cases. The trial court may consider contingent fee contracts in awarding attorney fees under K.S.A. 26-509." (Emphasis added.)

The italicized language is dictum because it is unnecessary to the resolution of the issue in *Chapman.* See Black's Law Dictionary 1102 (8th ed. 2004) (judicial comment that is unnecessary to the decision in the case). Moreover, it is hereby clarified by the instant opinion. As the Johnsons point out, the rationale for employing different rules is not apparent. Both K.S.A. 26-509 at issue in *Chapman* and K.S.A. 40-256 at issue in the present case are fee shifting statutes. Under the former, the condemned party can recover fees if he recovers more than the condemnation appraisers awarded. K.S.A. 26-509. Under the latter, simply prevailing on the coverage issues will not suffice; rather, plaintiffs must show that the refusal to pay was without just cause or excuse. K.S.A. 40-256. Given the party's higher burden under K.S.A. 40-256 and the language of KRPC 1.5(a), a court should particularly consider a contingent fee agreement.

Mid-Continent's position was most recently rejected in Kansas in *Ortiz v. Biscanin,* 34 Kan. App. 2d 445, 122 P.3d 365 (2004), as corrected on Nov. 25, 2005. There, the insurance company appealed the district court's award of attorney fees when the amount corresponded to the contingent fee in the insured's fee agreement. The company argued that under *Wolf,* the fee agreement should not have been considered. 34 Kan. App, 2d at 469-70. Judge McAnany concluded that the rule in *Wolf* "must be viewed in light

of KRPC 1.5(a). . . . Since *Wolf*, our Supreme Court decided *Hawkins v. Dennis*, 258 Kan. 329, 905 P.2d 678 (1995) . . . . Thus, the Kansas Supreme Court expressly utilized the applicable contingent fee contract in determining the reasonableness of the district court's award of attorney fees." 34 Kan. App. 2d at 470-71.

Although Kansas cases after *Wolf* generally do not support Mid-Continent's basic position, it also asserts that *Johnson II* is contrary to similar United States Supreme Court precedent. In *City of Burlington v. Dague*, 505 U.S. 557, 120 L. Ed. 2d 449, 112 S. Ct. 2638 (1992), the Supreme Court discussed the fee shifting provision of the Solid Waste Disposal Act and the Clean Water Act. Both provide for the award of "reasonable" attorney fees to a prevailing party. The Court held that the fee-shifting provisions do not permit enhancement of a fee beyond the lodestar amount to reflect the existence of a contingency fee agreement. It rejected the argument that an enhancement was needed to compensate for the risk of loss and nonpayment. 505 U.S. at 562-67.

Mid-Continent asserts that the Supreme Court's position is equally applicable in the present case. As other jurisdictions note, however, *Dague's* rationale is not applicable in all cases. See *Polselli v. Nationwide Mutual Fire Ins. Co.*, 126 F.3d 524, 535 (3d Cir. 1997) ("Since this case is governed by Pennsylvania law, however, we must predict whether the Pennsylvania Supreme Court would permit consideration of the contingent risk of a particular case in calculating a reasonable fee for that case. We conclude that the Pennsylvania Supreme Court would permit such consideration . . . . The federal fee-shifting statutes considered in *Dague* did not provide for consideration of contingent risk. If those statues did require district courts to consider contingent risk, we believe that *Dague* would have been decided differently."); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1137 n.2, 104 Cal. Rptr. 2d 377, 17 P.3d 735 (2001) ("*Dague* . . . addressed a fee-shifting provision under two federal environmental protection statutes. Significantly, the federal courts have not applied the rationale of the majority in *Dague* to other types of cases involving contingent attorney fees."); *Toshiba Machine Co. v. SPM Flow Control, Inc.*, 180 S.W. 3d 761, 783 (Tex. App. 2005) ("The Supreme Court held that such en-

hancement was not permitted under the statutes in question. . . . Since this case involves neither of those statutes, *Dague* offers little guidance and imposes no restrictions here. Moreover, Texas courts consistently allow the use of a multiplier based upon the contingent nature of a fee under Texas statutes allowing recovery of attorney's fees.").

In short, Mid-Continent's argument that a district court should not consider a contingent fee agreement when awarding fees under K.S.A. 40-256 is clearly inconsistent with KRPC 1.5(a). Under the rationale of *Hawkins, Service, Chapman*, and *Ortiz*, a district court should consider such an agreement as one factor in awarding attorney fees. If a court analyzes all of the applicable factors and arrives at a number that corresponds to an amount as computed under the agreement's formula, that number should not be deemed unreasonable per se.

As the district court essentially acknowledged, however, the contingent fee agreement cannot be the sole factor considered. K.S.A. 40-256 requires the attorney fee to be a "reasonable sum." As the Texas Supreme Court stated in *Arthur Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex. 1997):

"While we do not doubt that many plaintiffs must contract for a contingent fee to secure the services of a lawyer, *we do not believe that the [Deceptive Trade Practices Act] authorizes the shifting of the plaintiff's entire contingent fee to the defendant without consideration of the factors required by the Rules of Professional Conduct.* A contingent fee may indeed be a reasonable fee from the standpoint of the parties to the contract. But, we cannot agree that the mere fact that a party and a lawyer have agreed to a contingent fee means that the fee arrangement is in and of itself reasonable for purposes of shifting that fee to the defendant.

"A party's contingent fee agreement should be considered by the factfinder . . . and is therefore admissible in evidence, but that agreement cannot *alone* support an award of attorney's fees." (Emphasis added.) 945 S.W.2d at 818-19.

See also *Southall v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc.*, 283 Ark. 335, 337, 676 S.W.2d 228 (1984) ("We do not read our cases to require us to compute fees mechanically and without question on the basis of a fee contract between the parties. It remains our duty to fix a fee that is reasonable. Automatic acceptance of a lawyer's contract with a client would be an abdication of our duty

to supervise the conduct of the bar and do justice to the losing as well as the winning side.").

Having affirmed the rationale of *Hawkins, Service, Chapman,* and *Ortiz,* the question remains whether the district court abused its discretion in determining the attorney fee of $1,329,233.51.

In making its award, the district court stated:

"The fee frequently charged in garnishment proceedings is contingent on the recovery. The money here is substantial and the results favorable. The fee arrangement is some evidence of the value of the attorney services in the community. That information was before the Court which was in a position to weigh the skill, experience, reputation and ability of the attorney performing the service. In the end the reasonable value of the attorney fee rests in the sound discretion of the trial judge who is an expert in the area and may draw on his or her own knowledge and expertise. The Court determines a reasonable sum as an attorney's fee for service in the garnishment proceedings before the trial court to be $1,329,233.51 together with $5,360.38. expenses."

On appeal, our Court of Appeals stated:

"In its second opinion on the attorney fees issue, the trial court carefully followed our remand order and engaged in a detailed discussion of the factors listed in KRPC 1.5. The trial court correctly ruled the law requires consideration of all relevant factors, not merely time spent multiplied by an hourly rate. The trial court also considered the fact attorney fees had already been assessed for the prior appeal and therefore, decided to assess attorney fees based only on the one-third contract figure for the initial stage of the litigation." *Johnson II,* slip op. at 7.

We agree. Pursuant to *Johnson I's* directive, the district court considered all of the factors under KRPC 1.5(a) prior to awarding an attorney fee pursuant to K.S.A. 40-256. At the time of the award, the judge had been the judge of the case for over 10 years; he was quite familiar with counsel on both sides and the quality of the work performed to obtain what he described as the "excellent result." The evidence presented at the hearing also supports the district court's discussion of these and other factors. Although the court did not state exactly how it computed the award, the fee is approximately one-third of the $4 million judgment entered.

We acknowledge Mid-Continent's evidence and its translation of this award into hourly rates. We also acknowledge, however, the high level of risk assumed by the Johnsons' counsel in a case that his more experienced cocounsel refused to join after the initial

monetary settlements with other parties had been received and before the garnishment action had been filed. Expert witness Morris testified, for example, that in his judgment as lead trial lawyer in the underlying personal injury suit, Westhoff was unlikely to have any assets available and perhaps had acted in a way that would raise significant insurance coverage issues. He opined it was not a prudent business decision by his firm—described by fellow expert witness Graybill as "the preeminent plaintiffs' firm"—to continue to pursue the litigation against Westhoff. Morris did not think that the Johnsons' present counsel "had any likelihood of success."

Although we recognize that the district court's award is high, our standard of review is not de novo. We cannot say that no reasonable person would agree with the decision of the district court. Accordingly, under the rationale of *Hawkins* and KRPC 1.5(a), the district court did not abuse its discretion in awarding $1,323,233.51 to the Johnsons as attorney fees for trial and pretrial work for the garnishment dispute.

In their cross-appeal, the Johnsons argue that the existence of a legal and ethical contingent fee agreement should be considered in the calculation of attorney fees. More important, they argue that the district court should calculate the assessed award using the percentage agreed upon by client and counsel unless the court finds that the KRPC 1.5 factors warrant a reduction in such an amount. Because the Johnsons claim the district court made no such warranted reduction, they essentially allege that it erred when it decided to "omit factors on appeal from consideration." As mentioned, they specifically argue that this court should award them the difference between the figures calculated using the two percentages contained in their fee agreement. They want the Court of Appeals' $12,000 award for appellate fees to be reversed and for this court to award fees of $266,666.67 for their appellate work. To recap, their fee figure is the product obtained by multiplying the default judgment amount (approximately $4 million in principal and interest) times 6⅔%—the difference between their purported entitlement in the fee agreement of 33⅓% of the amount of recovery through trial judgment (which the district court

awarded) and their 40% purported entitlement after appeal, *i.e.*, through their work in *Johnson I.*

Under the Johnsons' arguments, properly awarded fees and expenses would approach $1.6 million, the amount they actually paid their counsel. Accordingly, they claim that their resolution will "make them whole" on the issue of attorney fees and expenses for all trial and appellate work arising out of the entire garnishment action.

Mid-Continent argues that this viewpoint essentially eliminates the "reasonable sum" language contained in K.S.A. 40-256 and that the Court of Appeals has already awarded fees for the Johnsons' appellate work in the garnishment action, *i.e., Johnson I.*

We find nothing in KRPC 1.5(a) to support the Johnsons' "being made whole" argument. KRPC 1.5 contains nothing that suggests one factor is to dominate the other seven, *i.e.*, that the one creates a presumption that controls unless and until it is rebutted by the others, whether solely or collectively. Indeed, the "contingent fee" factor which they declare paramount is the last one of eight enumerated. *Cf. Service*, 201 Kan. at 221 (court upheld fee allowance to appellee's counsel under K.S.A. 40-256 by trial court which acknowledged that *"the provisions of any contingent fee contract between the appellee and her counsel should not be enforced against the insurance company under the provisions of the statute*, but that there was nothing to prevent the court from considering the terms of such contingent fee contract in making its determination as to a reasonable fee in a case of this kind.") (Emphasis added.) *Cf. Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 481, 163 P.2d 389 (1945) ("purpose of the statute allowing an attorney fee in insurance cases . . . [is] to permit the allowance of a fair and reasonable compensation to the assured's attorney in the event, after having been compelled to sue on his policy, he is successful in that effort."). *Cf. Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812; *Southall v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc.*, 283 Ark. 335.

**Issue 2**: *Did the district court err under the "law of the case" doctrine in considering the contingent fee agreement?*

Mid-Continent asserts that when the district court awarded the fee on remand, it violated the law of the case established by the Court of Appeals in *Johnson I*. The Johnsons insist otherwise.

In remanding and ruling that a full hearing with consideration of all factors listed in KRPC 1.5(a) was required to determine the attorney fees issue, the *Johnson I* court quoted *Wolf* for the proposition that K.S.A. 40-256 does not contemplate a " 'contingent fee conditioned on winning the case.' " 31 Kan. App. 2d at 275. Mid-Continent argues that this language in *Johnson I* is an explicit ruling under the law of the case doctrine "forbidding the award of a contingent fee."

Among other things, this doctrine necessitates that "where an appellate court has decided a particular issue, by explicit language or by necessary implication, the district court is foreclosed from reconsidering such an issue." *Edwards v. State*, 31 Kan. App. 2d 778, 73 P.3d 772 (2003) (citing *Guidry v. Sheet Metal Wkrs. Intern. Ass'n, Local 9*, 10 F.3d 700, 705-06 [10th Cir. 1993]).

Although the court in *Johnson I* quoted *Wolf*, it also clearly recognized the existence of KRPC 1.5: "Finally, our Supreme Court has provided standards *to be considered* in Kansas Rules of Professional Conduct 1.5 (fees) (2002 Kan. Ct. R. Annot. 352)." (Emphasis added.) 31 Kan. App. 2d at 275. Simply stated, the Court of Appeals did not explicitly rule that the district court was forbidden from considering the contingent fee agreement. Instead of ignoring the Court of Appeals' explicit instruction, as Mid-Continent asserts, on remand the district court actually analyzed all of the factors under KRPC 1.5 in accordance with the opinion. Moreover, the Court of Appeals has no authority to overrule the decisions of this court, *i.e.*, *Hawkins v. Dennis*, 258 Kan. at 329, and *Service v. Pyramid Life Ins. Co.*, 201 Kan. 196, 440 P.2d 944 (1968). See *Noone v. Chalet of Wichita*, 32 Kan. App. 2d 1230, 1236, 96 P.3d 674 (2004) ("We are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the court is departing from its previous position.").

Issue 3: *Did the district court abuse its discretion in the amount of attorney fees awarded for the attorney fee litigation, i.e., fees for fees?*

In *Moore v. St. Paul Mercury Ins. Co.*, 269 Kan. 272, Syl. ¶ 2, 3 P.3d 81 (2000), this court held that attorney fees incurred litigating the amount of attorney fees to be awarded are recoverable under K.S.A. 40-256. We see no reason to apply a different standard of review of the amount than the standard cited in the first issue, *i.e.*, abuse of discretion.

For the Johnsons' trial and pretrial work in litigating the amount of attorney fees, Mid-Continent argues that the district court's May 21, 2004, award of $51,580 in fees is too high and should be reduced to approximately $20,000.

The Johnsons respond that the district court award is too low; this court should reverse and award fees of $375,000. Their fee figure is the product obtained by multiplying two figures. First, the "attorney fee judgment amount" (the $1.5 million "at risk"—the difference between the $1.6 million which Johnsons claim is their fee entitlement under the contingent fee agreement and the approximate $100,000 Mid-Continent argues is a reasonable fee for the garnishment action). Second, 25%, instead of the fee agreement's 33⅓% of the amount of recovery through trial judgment— a discount they are willing to accept because of their acknowledged "reduced risk" on the attorney fees litigation.

For the Johnsons' appellate work in the attorney fee litigation, Mid-Continent argues the Court of Appeals correctly denied attorney fees after its decision in *Johnson II.*

The Johnsons respond that the Court of Appeals' denial of their appellate fees for litigating the amount of attorney fees should be reversed. They argue this court should instead award fees of $100,000 for all of their appellate work on the fees issue. Their figure is the product obtained by multiplying two figures. First, the "attorney fee judgment amount" (the $1.5 million "at risk"). Second, 6⅔%; once again, the contingent fee agreement's stated differential between the percentage of the amount of recovery through trial judgment (33⅓) and the percentage of amount of the recovery through appeal (40).

In awarding "fees for fees" to the Johnsons, the district court stated:

"With respect to this fee the Court has again reviewed the factors provided in Rule 1.5, the exhibits, and the experts testimony. In addition the Court has taken into account the total hours and expenses for litigation of the amount of the fee as provided by Garnishor's 'Supplemental Submission of Attorneys' Fees and Expenses' filed May 4, 2004, has drawn on the Court's knowledge and expertise and considered the exhibits and the expert testimony. The Court determines a reasonable sum as an attorney's fee for litigating the amount of the fee under *Moore*, supra to be $51,580.00 plus $13,802.78 expenses."

The court did not specifically indicate how it calculated the amount. The record shows that the Johnsons submitted a list of attorney fees and expenses showing a total of 200 hours invested by all individuals in the attorney fee litigation. They also presented an exhibit stating that lead counsel charged a fee of $300 per hour in risky cases, $200 per hour for his associate, and $90 per hour for his paralegal. Accordingly, Mid-Continent opines that the court computed the award as follows: 160 hours at $300/hour for lead counsel; 3.8 hours at $200/hour for an associate; 31 hours at $31/hour for a paralegal. Mid-Continent argues that 100 hours was more reasonable, and the fee figure should total $20,000.

As mentioned previously, our standard of review is not de novo. Mid-Continent must demonstrate that no reasonable person would agree with the decision of the district court. The court's award is in line with reasonable figures provided by the Johnsons. It is not the function of the appellate court to reweigh the evidence. *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 191-92, 62 P.3d 236 (2003). We conclude that the district court did not abuse its discretion.

*Issue 4: Did the district court err in awarding witnesses' fees and expenses under K.S.A. 40-256?*

Mid-Continent asserts that expert witnesses' fees and expenses are not recoverable under K.S.A. 40-256. Because the Court of Appeals held that Mid-Continent was attempting to raise the issue for the first time on appeal, it refused to consider the issue. *Johnson II*, slip op. at 8 (citing *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 [2003] [as a general rule,

issues not raised before the lower court cannot be raised for the first time on appeal]).

Mid-Continent asserts, however, that the Court of Appeals overlooked evidence to the contrary. At the attorney fees hearing in April 2004, Johnsons' counsel sought to enter into evidence an itemized list of time and expenses for the experts that testified:

"Q. [PLAINTIFFS' COUNSEL]: . . .If you would turn to Exhibit I.

"A. [DAVID MORRIS, PLAINTIFFS' EXPERT]: I have that before me.

"Q. Is that your opinion in this case?

"A. Yes it is.

"Q. And, while you're looking at exhibits, look at Exhibit Q. And I'll ask you if that is your time and expense and billings for this case, through October of 2003?

"A. Yes it is.

"Q. And has that, in fact, been paid?

"MR. BORTHWICK [DEFENSE COUNSEL]: Your Honor, excuse me, I'm going to *object to this exhibit, because I don't believe the statute contemplates the payment of expert witness fees. So, I object to the exhibit and any testimony concerning it.*

"MR. SHARP: Under *Moore*—under the *Moore* [ *v. St. Paul Mercury Ins. Co.,* 269 Kan. 272, 280-81, 3 P.3d 81 (2000)] opinion, we are entitled to fees and expenses on a contingent fee case in which you are going to have to advance—stand the cost of advancing money for experts. I think it is recoverable under the contingent fee agreement. In the event that it's not, I'm certain the Court will take that into consideration.

"THE COURT: I believe that it is recoverable. If you've got some law that can persuade me to the contrary, I invite you to submit it." (Emphasis added.)

In response, the Johnsons argue that Mid-Continent only raised an evidentiary issue, and not a substantive one.

The record does not reveal a substantive argument or motion filed on the issue. Nevertheless, because Mid-Continent's counsel objected to the exhibit and testimony, opined before the district court that the statute does not contemplate the payment of expert witness fees, and raised the issue in its brief in *Johnson II*, we will allow appeal of the issue. *Price v. Grimes,* 234 Kan. 898, 901, 677 P.2d 969 (1984) (to preserve issue for appeal, objection must be timely filed and specifically state grounds for appeal).

Mid-Continent asserts that expert witness fees are not recoverable because K.S.A. 40-256 does not specifically authorize them. Resolution of this issue necessitates statutory interpretation; this

court exercises unlimited review. *State v. Denney*, 278 Kan. 643, 649, 101 P.3d 1257 (2004).

The Court of Appeals has held that "the fee of an expert witness may not be charged to the losing party *unless specifically authorized by statute. See Divine v. Groshong*, 235 Kan. 127, 679 P.2d 700 (1984)." (Emphasis added.) *Grant v. Chappell*, 22 Kan. App. 2d 398, 399, 916 P.2d 723, *rev. denied* 260 Kan. 992 (1996). Accord: 31A Am. Jur. 2d, Expert and Opinion Evidence § 16 ("Attorney's fees and expert fees are separate elements of litigation costs, and a statutory authorization for award of attorney fees does not include award of expert fees," citing *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 113 L. Ed. 2d 68, 111 S. Ct. 1138 [1991] [(superceded by statute]).

In *Casey*, the United States Supreme Court reviewed a claim for expert witness fees under 42 U.S.C. § 1988 (1982) which authorized an award of a "reasonable attorney's fees" as "part of the costs." The Court concluded that "§ 1988 conveys no authority to shift expert fees." 499 U.S. at 102. It noted that the statute's plain language did not reference expert fees and that by contrast, "[a]t least 34 statutes in 10 different titles of the United States Code explicitly shift attorney's fees *and* expert witness fees." 499 U.S. at 89. The Court further observed that "We think this statutory usage shows beyond question that attorney's fees and expert fees are distinct items of expense. If, as [petitioner] argues, the one includes the other, dozens of statutes referring to the two separately become an inexplicable exercise in redundancy." 499 U.S. at 92.

Our own analysis of the issue begins with the statute. K.S.A. 40-256 states:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201 . . . if it appear[s] from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum *as an attorney's fee for services* in such action, including proceeding upon appeal, *to be recovered and collected as a part of the costs.*" (Emphasis added.)

The language of the statute is unambiguous. In Kansas, "[t]he fundamental rule to which all other rules are subordinate is that

the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. [Citation omitted.]" *State v. Denney*, 278 Kan. at 650. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *State v. Marsh*, 278 Kan. 520, Syl. ¶ 18, 102 P.3d 445 (2004). The statute only provides for a reasonable sum as an "attorney's fee for services." As in *Casey*, this phrase does not include expert witness fees. Nor do "costs" include such fees. In *Grant* our Court of Appeals rejected plaintiff's argument that K.S.A. 60-2003 authorized payment of his physician witness fees, because there was nothing in the statute permitting the assessment of expert witness fees as costs. 22 Kan. App. 2d at 399.

Similar to the approach of the Supreme Court in *Casey*, we independently observe that in contrast to K.S.A. 40-256, several Kansas statutes do specifically authorize assessment of expert witness fees. See, *e.g.*, K.S.A. 16-1305 (specifically authorizing the "actual costs of the action, including attorney, paralegal, and expert witness fees."); K.S.A. 49-426(d) ("The court . . . may award costs of litigation, including attorney and expert witness fees, to any party."); K.S.A. 2005 Supp. 75-5672(c)(5) ("All moneys credited to the [natural resources damages trust] fund shall be used to pay the cost of: . . . legal costs, including expert witness fees, incurred in the recovery of the expenditures.").

Despite the plain statutory language, the Johnsons argue that this court has long recognized that litigation expenses, *e.g.*, expert witness fees and expenses, are part of the reasonable attorney fees awarded under fee shifting statutes. In support, the Johnsons cite *Missouri Medical Ins. Co. v. Wong*, 234 Kan. 811, 676 P.2d 113 (1984), and *Allison v. Board of Johnson County Comm'rs*, 241 Kan. 266, 737 P.2d 6 (1987).

In *Wong*, the district court awarded an insured attorney fees after the insurer brought a declaratory judgment action seeking cancellation of the insurance policy. In awarding attorney fees, the district court made the following finding:

"30. As a result of plaintiff's unjustified refusal to acknowledge coverage and provide a defense to the claims of defendants . . . Wong was compelled to employ independent counsel and has incurred attorney fees and expenses in establishing coverage and plaintiff's duty to defend. Defendant Wong has also incurred attorney fees, expenses and costs in connection with his participation in this action. Defendant Wong is entitled to judgment against plaintiff for all such *attorney fees, expenses, and costs*." (Emphasis added.) 234 Kan. at 823.

Citing *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 151, 519 P.2d 737 (1974), this court concluded that the district court did not abuse its discretion in awarding attorney fees to Dr. Wong. 234 Kan. at 824. As Mid-Continent correctly observes, however, *Wong* did not address the recovery of expert witness fees, and indeed, never mentions them.

The Johnsons next assert that in *Allison*, this court considered whether 42 U.S.C. § 1988(b) (1982) allowed a successful plaintiff expert witness fees, when the statute only provided for the recovery of "a reasonable attorney's fee." Mid-Continent acknowledges that the *Allison* court stated: "The costs of reasonable expert witness fees . . . necessary to the litigation of the case are also allowable. *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983)." 241 Kan. at 278-79. However, Mid-Continent argues that *Allison* never addressed the issue of expert witness fees; rather, the opinion only generally mentions the attorney fees and expenses awarded by the district court, which this court found reasonable and affirmed. 241 Kan. at 279.

More important, even had *Allison* approved assessment of expert witness fees under 42 U.S.C. § 1988, that holding has been superseded by *Casey*, which was decided 4 years later. Therefore, neither of the cases cited by the Johnsons specifically allow for an award of expert witness fees absent specific statutory authorization.

The Johnsons also argue that practical realities of litigation warrant the award of expert witness fees under K.S.A. 40-256. While the Johnsons enunciate clear policy reasons supporting their position, *e.g.*, "expert fees cannot reasonably be absorbed as overhead," the plain language of the statute provides a different result. Moreover, the allowance of attorney fees, costs, and expenses is a matter of public policy to be determined by the Kansas Legislature.

Per the authorities discussed earlier, the absence of specific statutory authorization for expert witness fees precludes such an award under K.S.A. 40-256. Therefore, the district court erred in awarding fees in the amount of $5423.60 for David Morris and $4712.50 for Jacob Graybill, or a total of $10,136.10. The Johnsons are entitled, however, under K.S.A. 60-2003(4) to recover witness fees of $10 per day and mileage under K.S.A. 28-125 for these witnesses.

Finally, after oral arguments the Johnsons moved this court, pursuant to K.S.A. 40-256 and Supreme Court Rule 7.07(b) (2005 Kan. Ct. R. Annot. 56), for $106,666.67 in attorney fees and expenses for the appeal to the Court of Appeals (*Johnson II*) and to this court as its "fees for fees." The motion effectively replaces their argument stated earlier in the opinion where they request $100,000. The formula for both arguments is the same, *i.e.*, the product obtained by multiplying two figures. One of the figures, however, is different. For the present motion, the "attorney fee judgment amount" is not the earlier $1.5 million "at risk," but rather the full $1.6 million. When in turn multiplied by the constant of 6⅔%—the fee agreement's stated differential between the percentage of recovery through trial judgment (33⅓) and recovery through appeal (40)—$106,720 is obtained instead of $100,050. The Johnsons acknowledge that the Court of Appeals awarded them nothing, but again argue this amount is necessary to "make them whole." Mid-Continent opposes the motion.

Appellate courts are experts on the reasonableness of attorney fees. *Link, Inc. v. City of Hays*, 268 Kan. 372, 383, 997 P.2d 697 (2000). After consideration of all relevant factors and the motions and responses, we conclude that the motion should be denied. See *Lee Builders, Inc. v. Farm Bureau Mutual Insurance Co.*, 281 Kan. 844, 137 P.3d 486 (2006). Johnsons' counsel has already recovered the principal amount of $1,392,813 in fees from the district court and the Court of Appeals—a reasonable sum under K.S.A. 40-256 for all of his firm's services to its Johnson clients.

The judgment of the Court of Appeals is reversed in part and affirmed in part. The judgment of the district court is reversed in part and affirmed in part.

BEIER, J., not participating.

LARSON, S.J., assigned.