NOT DESIGNATED FOR PUBLICATION

No. 120,245

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JIM HILDENBRAND, and JAMES B. HILDENBRAND,
Trustee of the JAMES B. HILDENBRAND LIVING TRUST,
Dated March 1, 2012,
*Appellees/Cross-appellants*,

v.

AVIGNON VILLA HOMES COMMUNITY ASSOCIATION, INC.,
*Appellant/Cross-appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed January 15, 2021.
Affirmed in part, reversed in part, and remanded with directions.

*Lawrence L. Ferree, III*, and *Brett T. Runyon*, of Ferree, Bunn, Rundberg & Ridgway, Chtd., of
Overland Park, for appellant/cross-appellee.

*Eldon J. Shields*, of Gates Shields Ferguson Swall Hammond, P.A., of Overland Park, for
appellees/cross-appellants.

Before ATCHESON, P.J., BRUNS, J., and BURGESS, S.J.

ATCHESON, J.: A long-running legal battle between James B. Hildenbrand and
Avignon Villa Homes Community Association that oversees the development where he
lives has returned to us for a second visit. In the first appeal, we reversed and remanded a
judgment the Johnson County District Court entered for the Homes Association requiring
Hildenbrand to remove extensive and unapproved landscaping to his home. In a bench
trial, the district court incorrectly applied the governing statutory standard in reviewing
the determination of a Homes Association committee to reject Hildenbrand's landscaping

1

plans. After reopening discovery and hearing additional evidence on remand, the district court ultimately: (1) found the Homes Association's Architectural Review Committee did not act in good faith and, therefore, violated K.S.A. 2015 Supp. 58-4604(a) when it rejected the bulk of Hildenbrand's landscaping plans; (2) set aside the earlier order requiring Hildenbrand to remove the landscaping; (3) rescinded an award of attorney fees to the Homes Association; and (4) ordered Hildenbrand to pay $25,000 in contractual fines to the Homes Association because he did not get approval from the Architectural Review Committee before landscaping his home.

The Homes Association has appealed, and Hildenbrand has cross-appealed. We affirm the district court in all respects except the amount of the fines. The district court's reasoning and the record support fines of $17,600. We remand to the district court for the limited purposes of revising the amount of the fines.

FACTUAL AND PROCEDURAL HISTORY

A. *History Through First Appeal*

We draw on our earlier opinion to set out the factual background and the procedural history leading up to the first remand to the district court. See *Hildenbrand v. Avignon Villa Homes Community Association, Inc.*, No. 114,040, 2016 WL 6350201 (Kan. App. 2016) (unpublished opinion) (*Hildenbrand I*). In what *Hildenbrand I* described as a condensed account, we stated:

"In 2012, Hildenbrand moved into Avignon Villa Homes, a residential development catering to adults with grown children. The homes are, by design, quite similar in appearance. The Homes Association arranges for mowing, snow removal, and other maintenance services for the community residents. The homeowners pay fees to the Homes Association and agree to abide by the extensive covenants, rules, and regulations governing land use in the development. Hildenbrand was informed of and received a copy of those materials during the purchase process.

2

"To promote the common appearance of the community, the Homes Association has developed several model landscape plans. The association's covenants require a homeowner to submit any contemplated landscaping to the Architectural Review Committee for advance approval. The committee consists of development homeowners elected by their peers.

"Shortly after Hildenbrand moved in, he and the Homes Association were at odds over some flower pots he put around his residence, his apparently continuing failure to park a car in his garage, and the placement of a satellite dish in his backyard. While Hildenbrand and the association were warring over the satellite dish, he submitted a plan for landscaping of his backyard that was considerably more elaborate than the suggested approaches. The association refused to consider his plan, since the dispute over the satellite dish had not been resolved. The association assessed daily 'fines' against Hildenbrand because he refused to move the satellite dish to an approved location on his property.

"In response to a request from Hildenbrand, the Federal Communications Commission issued an opinion letter to the effect that the Homes Association could not dictate where the satellite dish should be placed. The association withdrew its demand the dish be moved and rescinded the fines.

"In the meantime, Hildenbrand had been working with a professional landscaper to design plans for both his backyard and front yard. In late 2012, Hildenbrand submitted that landscape plan for his backyard to the association. The Architectural Review Committee approved parts of the plan and rejected other components. The next spring, Hildenbrand e-mailed a revised backyard plan and says he had a front yard plan hand delivered to the association's management office. During the court proceedings, the Homes Association suggested Hildenbrand didn't provide a front yard plan. The parties do agree the front yard plan never went to the Architectural Review Committee for consideration.

"In late April 2013, Hildenbrand spoke with the Homes Association property manager about his landscaping plans. She apparently looked at a file and seeing the review of the backyard plan from the preceding fall told Hildenbrand something to the effect that the landscaping had been approved. Taking that representation as a categorical go-ahead, Hildenbrand had the landscaper begin the extensive changes to his front and backyards. In June, the Homes Association and its lawyer sent letters to Hildenbrand telling him to stop the landscaping because his plan had not been approved. Although not directly relevant to the point we decide, we mention conflicting trial evidence some of

3

which suggests the landscaping had largely been completed by then and some of which suggests the most sweeping aspects of the plan remained to be done. The undisputed trial evidence established Hildenbrand completed the landscaping and paid about $17,000 for the project.

"Rather than responding directly to the Homes Association or its lawyer about the demand he halt the landscaping, Hildenbrand hired his own lawyer and filed a Chapter 61 limited action in the district court alleging the association's position violated his legal rights. The Homes Association counterclaimed for an order requiring removal of the landscaping—characterized as specific performance of the association's covenants—and for a money judgment reflecting both fines it had levied against Hildenbrand for the unapproved landscaping and its legal fees. Given the issues and the relief each side sought, the district court removed the case from the limited actions docket and treated it as a regular Chapter 60 civil suit, substantially expanding the discovery options and pretrial motions routinely available to litigants.

"Hildenbrand and the Homes Association tried the case to the district court sitting without a jury in early 2014. Broadly characterizing the evidence, the Homes Association did not contend the landscaping was aesthetically objectionable in any abstract sense or offer specific evidence it would materially diminish property values within the community. Rather, the association argued that Hildenbrand patently violated the covenants, rules, and regulations to which he agreed by making substantial changes to his property without advance approval and that the landscaping was far and away the most elaborate and ostentatious in the community. The association suggested both current owners and potential buyers might be put off by widely varying landscaping of the homes or especially elaborate landscaping of a few homes, thus undercutting a fundamental goal of presenting a common appearance throughout the development. Hildenbrand presented evidence, albeit questioned by the Homes Association, that removing the landscaping and restoring his property would cost about $40,000. The district court ruled against Hildenbrand on his claims against the Homes Association and entered an order that the landscaping be removed. In its ruling, the district court noted that Hildenbrand's overall landscaping plan had never been submitted to or considered by the Architectural Review Committee. So the district court stayed its order and directed that the Architectural Review Committee render a decision on the landscaping plan. The district court also gave Hildenbrand the option to challenge the committee's decision if he believed it were improperly made.

4

"Hildenbrand promptly submitted his full landscaping plan to the Architectural Review Committee, and the committee, a week later, rejected the bulk of the plan and, thus, the actual work that had been done. Exercising his prerogative under the district court's order, Hildenbrand disputed the decision.

"The district court heard testimony and received other evidence regarding the Architectural Review Committee's decision. The district court ruled that the committee acted in 'good faith' in denying Hildenbrand's landscaping plan and, therefore, satisfied the governing legal standard. The district court rejected Hildenbrand's arguments that the committee applied unwritten or nonexistent restrictions to the plan and had allowed comparable landscape motifs for other residents. The district court reasoned that good faith could shield a committee decision that differed from earlier decisions for other residents or was 'erroneous or unfair.' In its memorandum decision on this point, the district court focused on what it perceived to be the 'state of mind' of the committee members as they reviewed the landscaping plan. Hildenbrand filed a notice of appeal seeking review of the district court's determination and other issues arising from the trial.

"After the notice had been filed, the district court took up the Home Association's request for a judgment covering the fines assessed against Hildenbrand and an award of its litigation costs, including attorney fees. The district court awarded the association $85,000 in attorney fees but withheld any ruling on the association's fines specifically to await the outcome of Hildenbrand's appeal. The district court also stayed its order for removal of the landscaping during the appeal, conditioned on Hildenbrand posting a bond for the attorney fees. We understand Hildenbrand has posted the bond. He then filed a second notice of appeal pertaining to the attorney fees." 2016 WL 6250201, at *1-3.

In considering Hildenbrand's initial appeal, we recognized the covenants, rules, and regulations form a contractual agreement creating mutual rights and obligations between Hildenbrand and the Homes Association. As the parties and the district court understood, the overarching agreement is subject to the Kansas Uniform Common Interest Owners Bill of Rights Act, K.S.A. 2015 Supp. 58-4601 et seq., a statutory scheme designed to preclude oppressive and secretive practices by homes associations in dealing with their members. Particularly pertinent here, K.S.A. 2015 Supp. 58-4604(a) provides: "Every contract or duty governed by this act imposes an obligation of good faith in its performance or enforcement."

5

In *Hildenbrand I*, we held K.S.A. 2015 Supp. 58-4604(a) imposes both a duty to act in subjective good faith, meaning honesty in fact, and an objective duty to engage in reasonable standards of fair dealing. 2016 WL 6350201, at *5. We do not again detail the legal reasoning behind the determination. The parties have not disputed that construction of the statute, and it has become the law of the case. See *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998); *Garetson Brothers v. American Warrior, Inc.*, 56 Kan. App. 2d 623, 650-51, 435 P.3d 1153 (2019). Although the district court acknowledged the application of K.S.A. 2015 Supp. 58-4604(a), it considered only a form of subjective good faith in assessing the actions of the Architectural Review Committee. We, therefore, found its approach legally incomplete and insufficient to support the resulting judgment for the Homes Association.

*B. History Following Remand*

In remanding, we afforded the district court considerable discretion in how best to address the statutory good-faith requirement. By then, the district court judge who first heard the case had retired and a new judge had been assigned. Consistent with the latitude in *Hildenbrand I*, the district court then reopened discovery and later reconvened the bench trial to hear additional evidence. The new evidence included e-mails among the members of the Architectural Review Committee shortly before their consideration of Hildenbrand's landscaping plans for his front and back yards. As we have explained, the committee reviewed the plans at the direction of the district court in the midst of the initial litigation long after Hildenbrand actually had landscaping done. None of the committee members testified in the reconvened bench trial, and only one of them testified during the initial district court proceedings. The parties also introduced evidence about other nonstandard landscaping plans submitted to the Architectural Review Committee and instances in which homeowners undertook landscaping without approval.

6

In June 2018, the district court issued a 14-page journal entry of judgment that largely reversed course based on the expanded body of evidence. The district court concluded the Architectural Review Committee did not consider Hildenbrand's landscape plans in good faith, thereby violating K.S.A. 2015 Supp. 58-4604(a). The district court relied, in part, on the e-mails the committee members exchanged before the review and characterized them as betraying a prejudgment against Hildenbrand and an intent to take a "hard line" with him and "to stand tall." The district court also weighed what it termed the "contentious relationship" between the Homes Association and Hildenbrand predating the landscaping and this litigation and found that history adversely colored the Architectural Review Committee's decision to reject the bulk of landscape plans. The district court pointedly concluded: "[B]ecause the ARC took a hard line, it was not observing the reasonable standards of fair dealing and did nothing more than stand its ground."

The district court also concluded the record evidence failed to show "the landscaping was poorly done or was likely to have a negative impact on the value of surrounding homes in the community." That conclusion, the district court observed, bore heavily on the nature and scope of any potential remedy.

The district court largely discounted the comparative evidence on how the Architectural Review Committee treated other landscaping proposals that differed from the approved pattern plans. None of those were of the same scale as what Hildenbrand proposed or had put in at his home. Likewise, the other landscaping done without approval was consistently of a much smaller scale, rendering that evidence essentially irrelevant from the district court's perspective.

The district court clearly found the Architectural Review Committee's decision rejecting Hildenbrand's landscaping plan did not conform to the objective fair-dealing component of good faith required under K.S.A. 2015 Supp. 58-4604(a). Despite the overall length and thoroughness of the journal entry, the district court only briefly

7

discussed the subjective honesty-in-fact aspect of good faith. The discussion indicates the district court found a lack of subjective good faith, as well. The journal entry is nearly as pointed in its finding on that part of the statutory requirement. Any lack of clarity ultimately would have no legal effect on our review or determination of the appeal. The Architectural Review Committee was obligated to act with both subjective and objective good faith and the lack of either violated K.S.A. 2015 Supp. 58-4604(a).

In assessing the remedy, the district court found that Hildenbrand "did not have clean hands in this matter" because he had undertaken the extensive landscaping of his home knowing he lacked approval from the Architectural Review Committee for much, if not all, of the work. We take the district court to mean Hildenbrand acted in a way worthy of some blame for having bypassed and, thus, breached the Homes Association's procedures for getting advance approval for landscaping plans. The district court's findings that the Architectural Review Committee failed to act in good faith and that Hildenbrand breached the contractual agreement are neither mutually exclusive nor otherwise in conflict in some way. But Hildenbrand's breach would not have permitted the committee to ignore its statutory duty of good faith under K.S.A. 2015 Supp. 58-4604(a).

The district court concluded that, on balance, the evidence did not warrant the Homes Association's requested remedy for an injunction requiring Hildenbrand to remove the landscaping. In coming to that conclusion, the district court considered the Architectural Review Committee's lack of good faith in rejecting the landscaping plans, along with the estimated cost of removing the landscaping and suitably restoring the yard and the lack of any demonstrably deleterious effect the landscaping had on property values. The district court similarly rejected removal of the landscaping as an inappropriately expansive remedy grounded in specific performance of the contractual agreement between Hildenbrand and the Homes Association. See *Hochard v. Deiter*, 219 Kan 738, 740, 549 P.2d 970 (1976) (district court may decline equitable remedy of specific performance if result would be oppressive or result in undue hardship).

8

The district court, however, initially found the Homes Association was entitled to money damages as an alternative remedy for Hildenbrand's failure to abide by the requirement for obtaining approval of the landscaping plans. The district court ordered Hildenbrand to pay the Homes Association $25,000 in damages for his breach of the agreement but provided no explanation for the amount.

On the matter of attorney fees to the Homes Association, the district court noted that *Hildenbrand I* found the issue was not ripe in light of the reversal of the underlying judgment for the Association and the remand for further proceedings. 2016 WL 6350201, at *4. With the reversal of the judgment, there no longer remained a legal basis to award attorney fees under the Homes Association agreement. Given the limited success of each side on remand, the district court declined to award attorney fees and ordered Hildenbrand and the Homes Association to bear their own legal costs and expenses.

As with many of the rulings in this case, the district court's journal entry triggered a motion from each side for reconsideration. The Homes Association asserted multiple issues in its motion. The district court denied all of them, and we do not catalogue them here. We consider them to the extent the Homes Association has incorporated them into its points on appeal.

Hildenbrand challenged the judgment for damages the district court entered against him. We do outline the district court's handling of that issue because it retained the $25,000 judgment against Hildenbrand but revised the legal basis for the award—the point Hildenbrand has raised in his cross-appeal. In his motion for reconsideration to the district court, Hildenbrand argued that the Homes Association sought only specific performance or injunctive relief requiring removal of the landscaping as the remedy for his ostensible violation of the contractual agreement and never made an alternative claim for money damages.

9

In its written order on the motions for reconsideration, the district court retained the $25,000 amount but recharacterized it as fines the Homes Association imposed on Hildenbrand rather than damages for breach of contract. Under the Homes Association's Rules Enforcement and Fines Policy, the Association can impose a private fine of up to $25 a day on a homeowner for a "continued failure" to comply with his or her contractual obligations. The Homes Association imposed fines against Hildenbrand, deeming his lack of advance approval for the landscaping and then his refusal to abate the violation by removing the landscaping to be a continued failure.

The fines have become a sticky wicket over the course of this litigation. In the original judgment, the district court held the Homes Association's request for fines in abeyance to await the outcome of the first appeal. But in *Hildenbrand I*, we questioned whether the undecided fines left the parties without a final appealable order and invited them to address that concern. See *Wilkinson v. Shoney's, Inc.*, 265 Kan. 141, Syl. ¶ 4, 958 P.2d 1157 (1998). The Homes Association filed a notice with this court that its pending "request for fines is hereby withdrawn for the purposes of this litigation." We were satisfied that the notice rendered the judgment appealable and proceeded to decide the case. *Hildenbrand I*, 2016 WL 6350201, at *3.

In its order, the district court found that the Homes Association had relinquished its claim for fines only through the date it filed the notice with us withdrawing them. The district court determined the fines accrued thereafter through the date of its journal entry. The district court concluded $25,000 in fines would be appropriate and substituted the fine for what it had awarded as contract damages in that amount.

The Homes Association duly appealed, and Hildenbrand has cross-appealed. That is what we now have in front of us.

We first take up the points the Homes Association has raised on appeal and then consider Hildenbrand's cross-appeal of the fines the district court enforced against him.

*Homes Association's Issues on Appeal*

• The Homes Association contends the opinion in *Hildenbrand I* left intact the district court's conclusion made as part of the first judgment that the Architectural Review Committee acted in subjective good faith or with honesty in fact. And, therefore, the district court erred in reassessing that component of statutory good faith on remand. We disagree. The opinion contains no express statement affirming the district court's conclusion on subjective good faith. The discussion of the legal requirements of K.S.A. 2015 Supp. 58-4604(a) and the broad directive to the district court on remand are quite the contrary. The opinion calls for a reevaluation of good faith under the statute and permits the district court to reopen the bench trial for additional evidence, if necessary. Nothing in that discussion limited the district court to a review of only the fair dealing component of good faith. In summarizing the scope of remand, *Hildenbrand I* states: "[T]he district court must decide the matter of good faith in conformity with the twin requirements of K.S.A. 2015 Supp. 58-4604(a) addressing both subjective honesty in fact and objectively reasonable standards of fair dealing." 2016 WL 6350201, at *7. The Homes Association's point is without merit.

• The Homes Association next argues the district court incorrectly imposed the burden of proof of good faith on it rather than on Hildenbrand. In the journal entry, the district court does not identify which party bore the burden of persuasion. We assume without deciding that Hildenbrand had the obligation to prove the Architectural Review Committee failed to act in good faith consistent with K.S.A. 2015 Supp. 58-4604(a). Here, the Homes Association asserted a counterclaim against Hildenbrand for breach of the contractual agreement and sought injunctive relief or specific performance. So the

11

Homes Association had the burden to prove a material breach and circumstances warranting those remedies. The Architectural Review Committee's lack of good faith appears to constitute an avoidance that might excuse Hildenbrand. If so, he would bear the burden of proving facts establishing the avoidance. See *Estate of Randolph v. City of Wichita*, 57 Kan. App. 2d 686, 696, 459 P.3d 802, *rev. denied* 312 Kan. ___ (August 31, 2020).

But nothing in the district court's journal entry indicates it misallocated the burden. Kansas appellate courts presume a district court has applied the correct burden of proof absent a clear showing otherwise. See *State v. Gideon*, 257 Kan. 591, 615, 894 P.2d 850 (1995); *Fox v. Wilson*, 211 Kan. 563, Syl. ¶ 4, 507 P.2d 252 (1973). The Homes Association suggests an ambiguous remark from the district court in speaking from the bench demonstrates the burden of proof had been incorrectly placed. We are unpersuaded, especially since a detailed written decision in a civil case will be given primacy over earlier oral comments from the bench. *Valadez v. Emmis Communications*, 290 Kan. 472, 482, 229 P.3d 389 (2010); *Gill Mortuary v. Sutoris, Inc.*, 207 Kan. 557, 562, 485 P.2d 1377 (1971).

Ultimately, however, the issue lacks legal significance, given the district court's ruling. The district court found that the evidence established the Architectural Review Committee did not act in good faith under K.S.A. 2015 Supp. 58-4604(a) when it considered Hildenbrand's landscape plans. In other words, the weight or preponderance of the evidence as the district court viewed the record demonstrated no good faith. Accordingly, it doesn't matter where the district court placed the burden. That finding obviously satisfied the burden Hildenbrand had to carry, if the obligation were his. And that's the standard the Homes Association says governs. If the burden were properly on the Homes Association, then the finding established it failed to cross that evidentiary threshold.

We would have to determine who, as a legal matter, actually bore the burden of proof if the district court found the evidence on good faith to be evenly balanced or in equipoise and ruled for Hildenbrand for that reason. The legal conclusion would be error if he bore the burden of proof. That would likewise be true if neither side offered any relevant evidence on good faith.

But here, there was a fair amount of relevant evidence. The district court weighed that evidence and found the Architectural Review Committee acted without the requisite good faith. If the district court accurately weighed the evidence, then the conclusion is legally correct regardless of who bore the burden of proof. This procedural argument, which presumes the sufficiency of the evidence, does not require us to reverse the judgment. The Homes Association also challenges the sufficiency of the evidence, and that's a different argument for reversing the district court. We turn to it next.

• In examining the sufficiency of the evidence following a bench trial, we ask whether substantial evidence supported the district court's factual findings and, in turn, whether those facts support the legal conclusions. See *Stormont-Vail Healthcare v. Board of Shawnee County Comm'rs*, 59 Kan. App. 2d ___, 2020 WL 7270688, at *3 (Kan. App. 2020); *Kansas Healthcare Stabilization Fund v. St. Francis Hospital*, 41 Kan. App. 2d 488, 503, 203 P.3d 33 (2009). We do not reweigh the evidence or make independent credibility findings—we defer to the district court's assessment of conflicting evidence. But we exercise unlimited review in determining if that evidence warrants the ultimate legal conclusions. *Stormont-Vail Healthcare*, 2020 WL 7270688, at *3.

A district court, of course, can consider no more evidence than the parties choose to present during a bench trial. Here, some members of the Architectural Review Committee were conspicuously missing, creating a gap in what might be considered highly relevant evidence. The district court could not fill in that gap with guesswork and had to weigh only the available testimony and exhibits.

13

Here, the district court relied heavily on the e-mail comments among the committee members in advance of their review of Hildenbrand's landscape plans and also considered the continuing animosity between the Homes Association and Hildenbrand as lending context to those remarks. Although the e-mail includes references to being fair, the district court largely discounted those statements as window dressing or lip service. The district court lent far more weight to the comments we have already mentioned. The committee members agreed to taking a "hard line" with Hildenbrand and not backing down. Remarks of that tenor certainly can be read to evince hostility toward Hildenbrand and an unwillingness to objectively examine his landscape plans. The district court read them in just that manner. We are not at liberty to reject that reasonable interpretation of the evidence. Moreover, our standard does not shift simply because the trial record consists largely of written materials or because the district court did not hear extensive live testimony. See *State v. Garcia*, 297 Kan. 182, 186-88, 301 P.3d 658 (2013).

As the district court pointed out, the mere assertion of an intent to be fair or to act in good faith provides no particular insulation. See *CIT Group/Sales Financing, Inc. v. E-Z Pay Used Car, Inc.*, 29 Kan. App. 2d 676, 680, 32 P.3d 1197 (2001). A fact-finder must be able to look behind such self-serving representations. Honesty in fact basically rests on a state of mind and may be proved or disproved with circumstantial evidence. See *Ball v. Credit Bureau Services, Inc.*, No. 111,144, 2015 WL 4366440, at *9 (Kan. App. 2015) (unpublished opinion). While the district court stopped short of imputing outright maliciousness to the members of the Architectural Review Committee, it found their collective attitude and approach to be something less forthright than required for honesty in fact as a component of statutory good faith.

Similarly, the district court found that attitude and approach failed to comport with the sort of reasonable standards of fair dealing marking the objective requirement of good faith under K.S.A. 2015 Supp. 58-4604(a). The e-mails indicated the Architectural Review Committee members approached their task not in a neutral, evenhanded way to objectively evaluate the landscape plans but with a disposition bent toward rejection of

14

the major components of the plans for ulterior reasons including what they viewed as Hildenbrand's obduracy and recalcitrance.

Given the narrow standard of review we apply, the district court's factual findings on the Architectural Review Committee members' state of mind or intent were supported in the record evidence. As we have indicated, evidence bearing on state of mind tends to be circumstantial and often elusive. Seldom do those animated by bad intent (or lack of good faith) directly announce the true reasons for their actions. Although there was some contrary evidence, we would have to engage in an impermissible appellate reweighing of the evidence to set aside the district court's key factual findings.

The Homes Association suggests the district court ignored some evidence in fashioning its findings of fact. But the suggestion is largely premised on the district court not mentioning that evidence in the journal entry. In presenting findings of fact and conclusions of law, a district court is not obligated to catalogue and comment on each witness and each piece of physical evidence admitted during a bench trial. Rather, the district court is expected to evaluate the kaleidoscope of evidence and to enunciate the governing facts it has derived from that evaluation. A district court may choose to explain in detail its reasoning. And explicit credibility findings resolving conflicting witness testimony greatly aid (and constrain) appellate review. But a district court's omission of some evidence from an order or a journal entry does not equate to a failure to consider the unmentioned evidence. See *State v. Cheatham*, No. 106,413, 2012 WL 4678522, at *2 (Kan. App. 2012) (unpublished opinion) (appellate court recognizes implicit credibility finding in district court's "editorial selectivity" in written ruling but points out benefit of explicit credibility determinations).

We turn to whether the district court's factual findings support its legal conclusion that the Architectural Review Committee did not act in good faith under K.S.A. 2015 Supp. 58-4604(a) in rejecting the plans, meaning Hildenbrand would have had to remove the landscaping under the court order then in effect. The subjective feature of statutory

15

good faith requires honesty in fact. Drawing on the Uniform Commercial Code, which served as a model for this part of the Kansas Uniform Common Interest Owners Bill of Rights Act, and other legal sources, we again conclude this requirement entails "a subjective intent to be forthright and fair." *Hildenbrand I*, 2016 WL 6350201, at \*5. This standard is captured, for example, in K.S.A. 2015 Supp. 84-1-201, comment 20; *Jackson v. State Bank Wapello*, 488 N.W.2d 151, 156 (Iowa 1992) (honesty in fact "'requires honesty of intent'") (quoting *Farmers Co-op Elevator, Inc. v. State Bank*, 236 N.W.2d 674, 678 [Iowa 1975]); *Town & Country State Bank of Newport v. First State Bank of St. Paul*, 358 N.W.2d 387 (Minn. 1984); and Black's Law Dictionary 836 (11th ed. 2019) (defining "good faith" as "honesty in belief or purpose" and "absence of intent to defraud or to seek unconscionable advantage"). The converse entails an intent to be dishonest or disreputable—a state of mind inconsistent with fairness, although not necessarily rising to a depravity of heart or wickedness.

The district court's factual findings support a lack of honesty in fact on the part of the Architectural Review Committee members. They did not review Hildenbrand's landscape plans with an honest intent but in furtherance of ulterior purposes and objectives.

Similarly, the district court's factual findings support a lack of good faith in the Architectural Review Committee's deviation from reasonable standards of fair dealing in considering the plans. Without repeating all that we have described, the committee members assessed the landscaping based, in part, on a perceived need to resist Hildenbrand and to respond to his ostensible animosity. Those elements have no place in an objective standard premised on fair dealing.

In short, there can be no statutory good faith under K.S.A. 2015 Supp. 58-4604(a) for decisions made and conclusions reached through prejudices or pernicious preconceptions. The district court's factual findings support its legal conclusion to that effect.

16

• The Homes Association challenges the district court's refusal to grant injunctive relief requiring Hildenbrand to remove the landscaping he had installed without advance approval from the Architectural Review Committee. As we have outlined, the district court similarly declined to order specific performance of the agreement between the Homes Association and Hildenbrand that also would have required removal of the landscaping. Injunctive relief and specific performance are both equitable remedies and, thus, afford the district court broad discretion in gauging their appropriateness in a particular case. See *Hochard*, 219 Kan. at 740 (specific performance); *Roll v. Howard*, 59 Kan. App. 2d ___, 2020 WL 7292506, at *9 (Kan. App. 2020) (permanent injunction); *Hunter Health Clinic v. Wichita State University*, 52 Kan. App. 2d 1, 13, 362 P.3d 10 (2015) (injunction). We review decisions granting or denying injunctions for abuse of discretion. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019); see *Biglow v. Eidenberg*, 308 Kan. 873, 894, 424 P.3d 515 (2018).

A district court should look at an array of factors to assess the appropriateness of permanent injunctive relief in favor of party who has proved a cognizable injury: (1) whether the absence of an injunction would result in irreparable harm; (2) no adequate remedy at law; (3) the proved injury outweighs the harm an injunction would cause the party to be enjoined; and (4) the injunction would not impair a public interest or good. *Roll*, 2020 WL 7292506, at *1, Syl. 3; see *Empire Mfg. Co. v. Empire Candle, Inc.*, 273 Kan. 72, 86, 41 P.3d 798 (2002). Injunctions typically avert harm by prohibiting specific actions and, thus, maintaining the status quo. But they can compel the enjoined party to engage in some sort of affirmative conduct, thereby taking on a mandatory rather than prohibitory character. A mandatory injunction of the sort the Homes Association sought is considered "an extraordinary remedy" demanding the district court's exacting scrutiny

17

and an especially compelling case for the relief. See *Mid-America Pipeline Co. v. Wietharn*, 246 Kan. 238, 242, 787 P.2d 716 (1990).

The district court did not abuse its discretion in denying the Homes Association a mandatory injunction or specific performance requiring Hildenbrand to remove the landscaping. The cost to Hildenbrand to do so would have been substantial—$40,000 according to a credible estimate from the first part of the trial. The landscaping may have been extensive and even grandiose, but no one characterized it as grotesque. No evidence established the landscaping depressed property values. And the evidence failed to show the landscaping itself created any harm, let alone irreparable harm. The Homes Association may have been entitled to monetary damage of some amount to remedy Hildenbrand's breach in failing to get approval for the landscaping. But the Homes Association never pursued damages as an alternative relief. The significant financial harm the injunction would have inflicted on Hildenbrand seems to outstrip the rather abstract idea the Homes Association had to ruthlessly enforce its rules as an end in itself or as a means necessary to prevent anarchy from reigning. Finally, the public interest would seem to be wholly indifferent to whether the landscaping stayed or vanished.

Those considerations quite arguably would support the district court's denial of a mandatory injunction even if the Architectural Review Committee had reviewed and rejected Hildenbrand's landscaping plans in good faith consistent with K.S.A. 2015 Supp. 58-4604(a). But we have affirmed the district court's conclusion the committee did not act in good faith, and that represents a compelling ground cutting against a mandatory injunction. See *Bouton v. Byers*, 50 Kan. App. 2d 34, 61, 321 P.3d 780 (2014) (recognizing maxim that party must do equity to receive equity). The district court, in turn, did not abuse its discretion in denying injunctive relief to the Homes Association. It identified the legal standards, understood the facts, and ruled in a way we are confident other district courts would have in comparable circumstances.

18

• The Homes Association appeals the district court's decision denying its request for attorney fees. Under the contractual agreement with the property owners, the Homes Association may recover "reasonable attorneys' fees" it has incurred in enforcing the agreement. The Homes Association sought and received an award of $85,000 from the district court before the appeal in *Hildenbrand I*. Because we reversed the underlying judgment and remanded for further proceedings, we found the award premature. Following the remand, the Homes Association again sought attorney fees. The district court denied the request and ordered both sides to bear their own attorney fees.

We mention that the Kansas Uniform Common Interest Owners Bill of Rights Act permits a district court to award reasonable attorney fees. See K.S.A. 2015 Supp. 58-4621(a). The statute is not as clear as it might be as to the precise condition precedent for a fee award. Presumably, a party prevailing on claims brought under the Act would be eligible. See Uniform Common Interest Owners Bill of Rights Act, § 21, comment 1 (language mirroring K.S.A. 58-4621[a] intended to give court discretion to award attorney fees to a prevailing party).

The Homes Association preserved the award of attorney fees as an issue but had not filed a motion requesting additional attorney fees for its legal representation in the district court after remand. The district court's journal entry following the reconvened bench trial effectively foreclosed such a request and expressly declined to reinstate the earlier award of $85,000.

Based on their experience and knowledge of the legal profession, district courts are deemed to be experts on attorney fees and may draw on that expertise in rendering an award in a given case. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 (2006). Accordingly, fee awards are another matter entrusted to the district court's sound discretion. See *Unruh v. Purina Mills*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009); *Johnson*, 281 Kan. at 940.

19

The Kansas Supreme Court has adopted the eight factors in Rule 1.5(a) (2020 Kan. S. Ct. R. 297) of the Kansas Rules of Professional Conduct, bearing on an ethically "reasonable" attorney fee, as a guide for district courts in making contractual or statutory fee awards. 281 Kan. at 940-41. The criteria revolve around the time required to undertake the work, the complexity of the litigation, customary fees or rates for comparable legal services, constraints the litigation imposes on the lawyer in terms of deadlines or forgoing other work, the experience and skill of the lawyer, the ongoing professional relationship (if any) between the lawyer and the client, the value of what was at stake in the case and the result obtained, and whether the fee arrangement is "fixed or contingent." 281 Kan. at 940-41; see Rule 1.5(a) (The factors in Rule 1.5[a] remain unchanged from 2006, when *Johnson* was decided.). A statutory attorney fee award to a prevailing party typically takes into account the degree of success—a factor similar to the result obtained. See *Farrar v. Hobby*, 506 U.S. 103, 114-15, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1164-65 (11th Cir. 2017). If a party obtains substantially less than the relief sought, its requested attorney fees properly may be reduced or even denied to reflect that lack of success. See *Farrar*, 506 U.S. at 115 (plaintiff seeking substantial monetary damages but recovering only nominal damages may be denied statutory attorney fee award, despite technically being prevailing party).

The Homes Association principally sought injunctive relief or specific performance of the contractual agreement and a resulting judgment requiring Hildenbrand to remove the landscaping from his home. The fines were entirely secondary. They could be enforced through a lien on the homeowner's property and considerably narrower litigation to foreclose the lien. Arguably the Homes Association's failure to obtain an order abating Hildenbrand's violation through removal of the landscaping precluded a contractual award of attorney fees. The district court, however, did not rest its ruling on such a construction of the contractual agreement. Rather, the district court presumably relied on the limited result the Homes Association obtained. That is, the Homes Association expended far in excess of $85,000 in attorney fees and

20

recovered only $25,000 in fines in the district court. The district court, in its discretion, could find that to be unreasonable, thereby precluding an award under the contractual agreement.

Similarly, the district court properly could deny the Homes Association a statutory attorney fee based on a notable lack of success on the merits. Although the Homes Association prevailed on a comparatively minor and entirely secondary piece of the litigation, it failed to obtain relief on its primary claim. Under the circumstances, we find no abuse of discretion in the district court's determination.

*Hildenbrand's Cross-Appeal*

Hildenbrand has appealed the district court's $25,000 judgment against him for private fines levied by the Homes Association because he failed to get approval for and then failed to remove the unapproved landscaping. He contends the Homes Association relinquished its claim for fines in response to this court's show cause order in *Hildenbrand I*. As we have explained, the Homes Association filed a response in which it "agreed to withdraw" its request for fines—an issue the district court had left unresolved—to ensure this court had a final appealable judgment for review.

On remand, the district court construed the Homes Association's withdrawal to apply only to those fines that might have accrued up to the filing of the response. The district court, then, determined the Homes Association retained an unlitigated claim for fines going forward that could be considered on remand. The Homes Association's response clearly waived the claim for fines it had already asserted but which the district court had declined to decide. In *Hildenbrand I*, the court did not parse the response and briefly observed only that it erased any concerns about the appealability of the judgment. 2016 WL 6350201, at *3.

21

We suppose the notice can be read the way the district court has, consistent with the theory a waiver should be clear and unambiguous. See *Lewis v. Kansas Production Company, Inc.*, No. 115,174, 2017 WL 3575551, at *4 (Kan. App. 2017) (unpublished opinion) ("The hallmark of a waiver is 'a clear, unequivocal and decisive act of the party showing such a purpose.'") (quoting *Lyon v. Kansas City Fire & Marine Ins. Co.*, 176 Kan. 411, 414, 271 P.2d 291 [1954]). The Homes Association's notice does not contain an explicit waiver of a right to assert a claim for future fines regardless of the later course of the litigation.

The Homes Association rules set fines at "up to $25 per day" for violations. The record is not immediately clear as to the Homes Association's calculation of the fine amount. Correspondence between the Homes Association's lawyer and Hildenbrand admitted as exhibits during the bench trial state fines were being assessed at $25 a day. The district court, however, calculated the fines at $50 a day for each day between the filing of the Homes Association's response to this court in *Hildenbrand I* and the entry of its journal entry following the reconvened bench trial. The district court measured the period as 704 days. Those givens—$50 a day for 704 days—would yield a fine of $32,200. But the district court set the total fines at $25,000, matching the contractual damages the fines ostensibly replaced.

There are several problems with the district court's handling of the fines. First, it used $50 as the daily rate by treating Hildenbrand's failure to get approval for the front yard landscaping and the backyard landscaping as distinct violations of the contractual agreement and its rules governing fines. That seems demonstrably duplicative. The unapproved landscaping more naturally presents a single, if significant, violation. The Homes Association treated the violation that way when it informed Hildenbrand of the fine rate. We question whether the district court could fairly use a higher daily rate.

Second, the district court reduced what it determined to be the total fine to fit its $25,000 figure. We similarly question whether a district court can adjust a private,

22

contractual fine in that manner. The declaration and rules did not give the district court the authority to fix a fine; the authority rested with the Homes Association and the Architectural Review Committee. Absent a conclusion the total fines were unconscionable or otherwise legally unenforceable—and the district court made no such determination—the district court had the authority to enforce the fines required under the rules consistent with the Homes Association's demand on Hildenbrand. Here, that would be $25 a day for 704 days or $17,600.

We, therefore, conclude the district court erred in awarding a fine amount of $25,000 to the Homes Association and reverse that part of the judgment. We remand to the district court for the limited purpose of revising the judgment to reflect an award of $17,600 for the Homes Association and entering any other orders necessary to implement that revision.

Affirmed in part, reversed in part, and remanded with directions.