NOT DESIGNATED FOR PUBLICATION

No. 126,900

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MOLLY ELLIS,
*Appellant*,

v.

KIM MCNEESE and FLINT HILLS TECHNICAL COLLEGE,
*Appellees*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Oral argument held September 17, 2024. Opinion filed November 22, 2024. Affirmed in part, reversed in part, and remanded with directions.

*Linus L. Baker*, of Stilwell, for appellant.

*Jeffrey A. Bullins*, *Lawrence J. Logback*, and *Kemper A. Bogle*, of Simpson, Logback, Lynch, Norris, P.A., of Overland Park, for appellees.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

CLINE, J.: Molly Ellis was a nursing student at Flint Hills Technical College located in Emporia, Kansas. She sued Flint Hills and its Director of Nursing, Kim McNeese, under the Kansas Preservation of Religious Freedom Act, K.S.A. 2023 Supp. 60-5301 et seq. (KPRFA), after she was denied a religious exemption from receiving the COVID-19 vaccine. She appeals the district court's summary judgment order which dismissed her KPRFA claim because the court found she sued the wrong party and her claim was not ripe. She also appeals the court's intermediate order dismissing her claim

1

under the Kansas Consumer Protection Act, K.S.A. 50-623 et seq. (KCPA), against Flint Hills.

After a careful review of the record, we affirm the district court's decision on Ellis' motion to add or reinstate her KCPA claim, and we reverse the district court's summary judgment decision on her KPRFA claim. We find we have no jurisdiction over the dismissal of Ellis' KCPA claim because Ellis did not seek leave to file an interlocutory appeal of the intermediate order dismissing her KCPA claim without prejudice nor did she appeal the final order issued by the district court denying her motion to add or reinstate her KCPA claim with prejudice. Last, we grant Ellis' Rule 7.07(b) motion for attorney fees on appeal under KPRFA but leave open whether Ellis is entitled to her attorney fees in proceedings before the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Ellis enrolled as a student in Flint Hills' Practical Nursing program in August 2021. When Ellis was admitted, she told Flint Hills of her objections to receiving vaccinations on the grounds that they violated her personal religious beliefs. At that time, she asked Flint Hills to grant her a religious waiver for all vaccinations.

As part of her coursework for the spring 2022 semester, Flint Hills assigned Ellis to complete a clinical rotation at Newman Regional Health, a hospital in Emporia. Ellis was scheduled to begin that rotation on February 7, 2022. On January 19, 2022, Newman implemented a policy requiring Flint Hills students like Ellis, among others, to be vaccinated against COVID-19. On January 25, 2022, McNeese informed Ellis and other nursing students of Newman's policy, telling them they must comply or they would be unable to successfully complete the clinical requirements for the nursing program. Flint Hills told its nursing students if they were not vaccinated, they had the option to withdraw from the program but offered no other accommodation. Until this point, Ellis

2

had either obtained all necessary vaccinations or received exemptions for all necessary vaccinations in order to conduct her coursework at any facility.

That same day, Ellis requested information to allow her to seek a religious exemption from Newman's policy. McNeese told her Newman was not accepting any exemptions from Flint Hills students. To complete her clinical coursework, Ellis asked to switch to another medical facility, which was accepting religious exemptions to the COVID-19 vaccination. McNeese told Ellis she could not switch because that facility could not provide an equivalent clinical experience. McNeese also told Ellis she would receive a zero for each day that she missed of her clinical rotation at Newman.

On February 2, 2022, Ellis sued Flint Hills and McNeese (Defendants) under KPRFA, alleging they substantially burdened the exercise of her religion. Ellis sought injunctive relief enjoining Defendants from enforcing Flint Hills' clinical partners' vaccination policies against Flint Hills' nursing students and requiring Defendants to make a suitable religious accommodation to Ellis that would allow her to satisfy Defendants' clinical component of the nursing coursework and complete that coursework as scheduled (that is, graduate on time). She also sought declaratory relief, actual damages, costs, and attorney fees.

On February 25, 2022, the district court partially granted Ellis' motion for a preliminary injunction, ordering Defendants to revise Ellis' academic record at Flint Hills "to record 'incomplete' rather than failing grades for all past or future in person clinicals scheduled" for Ellis at Newman or another one of Flint Hills' clinical partners, Emporia Presbyterian Manor.

On March 11, 2022, Newman notified Flint Hills that it had amended its COVID-19 vaccination policy. Newman would now accept unvaccinated students into its facility

if Flint Hills provided those students with a religious or medical exemption from receiving the COVID-19 vaccine.

Ellis began her clinical coursework at Newman on March 21, 2022, after Flint Hills provided Ellis a religious exemption. Ellis graduated from Flint Hills in June 2022 with the rest of her class.

In June 2022, Ellis moved to amend her petition to assert a claim under the KCPA against Flint Hills. She alleged Flint Hills willfully failed to state or concealed, suppressed, or omitted material facts to Ellis such as failing to tell Ellis that Flint Hills intended to discriminate against Ellis' religious beliefs when she enrolled in its nursing program and would permit its contracting facilities to do so. Ellis also alleged Flint Hills made misleading statements that it would provide Ellis with adequate clinical experience.

After the district court granted Ellis' motion to add the KCPA claim, Defendants successfully moved to dismiss it based on their contention that KCPA claims fall under the Kansas Tort Claims Act, K.S.A. 75-6101 et seq. (KTCA). Defendants argued Ellis' claim should be dismissed for lack of subject matter jurisdiction because Ellis had not filed a written notice of claim under K.S.A. 12-105b before filing suit. Under K.S.A. 12-105b(d)(1), no person can sue a municipality or its employee unless the claim has been denied or deemed denied by the municipality. K.S.A. 12-105b(d)(1) provides the claim is deemed denied if the municipality does not approve the claim within 120 days.

On December 19, 2022, the district court agreed with Defendants and dismissed Ellis' claim without prejudice. That same day, Ellis provided the Flint Hills Board with a K.S.A. 12-105b notice. Since Ellis filed notice on December 19, 2022, Defendants had until April 18, 2023, to respond.

Defendants moved for summary judgment on April 13, 2023, arguing Ellis sued the wrong party in interest, the case was not ripe, and Ellis' claim was moot. Two days later, Ellis moved to amend to add or reinstate her KCPA claim since she had provided Defendants notice of her claim under K.S.A. 12-105b. Defendants opposed Ellis' motion, in part because Ellis filed it three days before the end of K.S.A. 12-105b(d)(1)'s designated time frame. Defendants also maintained Ellis' motion should be denied for bad faith and futility.

The district court granted Defendants' summary judgment motion and denied Ellis' motion to amend at the conclusion of the hearing. The court held Ellis sued the wrong party because it found Newman was the party who took the action "which caused this particular event." It also found Ellis' claim was not ripe because she did not request a religious exemption from Newman. The court made no ruling on whether Ellis' claim was moot. And it denied Ellis' motion to add or reinstate because it found there were insufficient grounds to allow for her KCPA claim under the facts. It later entered a memorandum decision which referred the parties to its oral pronouncement of its findings at the hearing. Ellis moved to alter or amend the court's decision, which was summarily denied.

Ellis appeals the summary judgment decision but not the decision denying her motion to add or reinstate her KCPA claim on the basis of bad faith and futility. Instead, she appeals the dismissal of her KCPA claim for failure to provide notice of the claim under the KTCA. After oral argument, she filed a motion for attorney fees on appeal under Supreme Court Rule 7.07(b) (2024 Kan. S. Ct. R. at 52).

REVIEW OF ELLIS' APPELLATE CHALLENGES

I. *Ellis' Kansas Preservation of Religious Freedom Act claim*

A. *Standard of review*

We review a district court's decision to grant or deny a summary judgment motion de novo, since we are in the same position as the district court to analyze the parties' summary judgment filings. *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021).

B. *Kansas Preservation of Religious Freedom Act*

Ellis claims that Flint Hills and McNeese burdened her right to religious freedom under KPRFA. Under KPRFA, the:

"(a) Government shall not substantially burden a person's civil right to exercise of religion even if the burden results from a rule of general applicability, unless such government demonstrates, by clear and convincing evidence, that application of the burden to the person:
(1) Is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest." K.S.A. 2023 Supp. 60-5303(a).

KPRFA defines "'[b]urden'" as "any government action that directly or indirectly constrains, inhibits, curtails or denies the exercise of religion by any person or compels any action contrary to a person's exercise of religion . . . ." K.S.A. 2023 Supp. 60-5302(a). Defendants do not dispute that they fall within KPRFA's definition of "'[g]overnment.'" See K.S.A. 2023 Supp. 60-5302(e).

6

Ellis claimed Defendants substantially burdened her exercise of religion by requiring her to adhere to Newman's mandatory COVID-19 vaccination policy and giving her failing grades because she did not attend the clinical rotation that Flint Hills scheduled at Newman. Ellis contends that, but for her lawsuit and the district court's injunction ruling, she would have been expelled from Flint Hills.

C. *The district court erred in dismissing Ellis' KPRFA claim because she did not sue Newman instead of Defendants.*

The district court found Newman was the governmental actor who burdened Ellis' religious exercise by enacting a mandatory COVID-19 requirement for Flint Hills nursing students. In making this ruling, it adopted Defendants' contention that Newman was the party responsible for burdening Ellis' religious exercise because Flint Hills "did not create the policy in question or control its implementation; and had no ability to mandate a revision of the hospital's policy, or demand that the hospital provide [Ellis] a religious exemption." The problem with this determination is Defendants and the district court misunderstood the basis of Ellis' claim.

Ellis' KPRFA claim was not based on Newman's policy but on Flint Hills' reaction to it. That is, when faced with a refusal to accept one of its students, Ellis alleged that Flint Hills offered her no alternatives to satisfy her coursework and receive the benefits she paid Flint Hills to provide. Ellis argues Defendants are effectively using Newman's policy as a red herring to distract from their responsibilities for her predicament.

Defendants characterize Ellis' KPRFA claim as a "fundamental misunderstanding of the government action at issue in this case." They maintain that Ellis' claimed injuries—"inability to attend her clinical coursework, and any failing grades that would have resulted from that lack of attendance"—are solely derived from Newman's action in

7

implementing its COVID-19 vaccination policy. But it is Defendants—and the district court—who fundamentally misunderstand Ellis' KPRFA claim.

In her petition, Ellis alleged Flint Hills refused to assign Ellis to another facility who would recognize her religious objection to the COVID-19 vaccine. As she notes, it was Defendants—not Newman—who required that she complete her clinical rotation at Newman and gave her failing grades when they knew the only reason she did not complete that rotation was her religious belief to not get the COVID-19 vaccine. Ellis sought to enjoin enforcement of Flint Hills' policy of requiring its nursing students (like Ellis) to satisfy the vaccination policies of Flint Hills' assigned clinical partners (like Newman). And she also asked the district court to order Defendants to make "a suitable religious accommodation that will allow [Ellis] to satisfy the [D]efendants' clinical components of the nursing coursework so that [Ellis] may complete her academic programs as scheduled in 2022 and beyond." Both claims are directed at Defendants' actions, not Newman's.

Ellis compares her claim to one that a party would make against a general contractor. As she points out, she contracted with Flint Hills (the general contractor), who, in turn, contracted with Newman (the subcontractor) to partially satisfy Flint Hills' obligations to Ellis. As Ellis notes, the general contractor is still liable for its contractual obligations to the party even if the subcontractor "renege[s]" on its deal with the general contractor. Flint Hills makes no contention that it was not obligated to provide Ellis with a place or method to complete the practical portion of her coursework. And the district court made no findings on the respective obligations between Ellis and Flint Hills regarding the practical nursing program.

Ellis likens her case to the situation presented in *Thoms v. Maricopa County Community College District*, No. CV-21-01781-PHX-SPL, 2021 WL 5162538 (D. Ariz. 2021) (unpublished opinion). While Defendants correctly point out that we are not bound

8

by decisions from other courts in other jurisdictions, we do find *Thoms* helpful in illustrating how the district court and Defendants misperceived Ellis' claim.

In *Thoms*, two Maricopa College nursing students (the plaintiffs) were to complete a rotation at Mayo Clinic as part of their assigned coursework. Like Newman, Mayo Clinic required students to show proof of COVID-19 vaccination and did not permit religious exemptions. The plaintiffs had sincere religious objections to receiving a COVID-19 vaccination. 2021 WL 5162538, at *1. Right before they served notice of their lawsuit, Maricopa College made them "a final accommodation offer." 2021 WL 5162538, at *3. It stated that "it encouraged Plaintiffs to complete the academic components of their courses this fall, and that it would allow Plaintiffs to withdraw from their clinicals without penalty, receiving an 'Incomplete' on their transcript." 2021 WL 5162538, at *3.

The plaintiffs filed a complaint alleging: "(1) violation of the Free Exercise Clause of the First Amendment through 42 U.S.C. § 1983; and (2) violation of Arizona's Free Exercise of Religion Act." 2021 WL 5162538, at *3. Arizona's Act has substantially similar language to KPRFA. See 2021 WL 5162538, at *5; see also Arizona Rev. Stat. Ann. § 41-1493.01(B)-(C) (providing "government shall not substantially burden a person's exercise of religion" but also providing the same legal excuse KPRFA provides for such burden; that is, if government demonstrates that application of the burden to the person is both [1] "[i]n furtherance of a compelling governmental interest" and [2] "[t]he least restrictive means of furthering that compelling governmental interest"). The *Thoms* court ultimately entered a preliminary injunction: (1) enjoining Maricopa College "from enforcing against Plaintiffs its requirements that nursing students satisfy the vaccination policies of their assigned clinical partners and that nursing students must complete their assigned in-person clinical rotations in order to complete their academic programs" and (2) ordering defendant "make available to Plaintiffs a suitable accommodation that will

allow Plaintiffs to satisfy the clinical components of their coursework and complete their academic programs as scheduled in December 2021." 2021 WL 5162538, at *13.

Ellis contends "Maricopa College, like Flint Hills aiming the finger at Newman, similarly pointed to the Mayo Clinic as the motivating culprit." And, as Ellis notes, the *Thoms* court rejected this argument. The Arizona federal district court acknowledged that, like Flint Hills, the sole reason why the plaintiffs could not complete their clinical requirements was that Maricopa College would not allow them to do so without receiving a COVID-19 vaccination, based on its assigned clinical partner's policies. While the *Thoms* court described the link between Maricopa College's policy and the burden on the plaintiffs' religious beliefs as "somewhat attenuated," it noted "a burden need not be directly imposed in order to be substantial." 2021 WL 5162538, at *6. The *Thoms* court found that Maricopa College's policy (of requiring its students to abide by the policies of their assigned clinical partners), when applied to the plaintiffs, was "likely to substantially burden Plaintiffs' right to freely exercise their sincere religious beliefs in violation of [Arizona's Free Exercise of Religion Act] and the First Amendment, to cause Plaintiffs irreparable harm, and to go against the public interest." 2021 WL 5162538, at *13.

Ellis made the same claim against Defendants, yet the district court only considered whether Newman's policy impacted Ellis—it did not consider whether Flint Hills' policy of requiring Ellis to comply with Newman's policy *also* substantially burdened Ellis' exercise of her religious beliefs.

Defendants attempt to distinguish the facts of *Thoms*. They state that Maricopa County Community College "provided alternative accommodations to students requesting accommodations from the 'most stringent clinical partner policy' for non-religious reasons, including allowing them to participate in online activities and simulations pursuant to their waiver from the Board of Nursing." Defendants also note

10

the *Thoms* court granted the plaintiffs' motion for a preliminary injunction because Maricopa College issued case-by-case exemptions to its policy for secular reasons but not for religious reasons. Defendants are only partially correct.

The nursing students in *Thoms* raised claims under the First Amendment to the United States Constitution and Arizona's Free Exercise of Religion Act. The *Thoms* court separately analyzed the two claims and found the plaintiffs were likely to succeed on the merits of both. 2021 WL 5162538, at *8, 11. Yet Defendants conflate the *Thoms* court's independent analysis of the two claims.

The district court also made a passing reference to *Thoms,* distinguishing it because Maricopa College had been doing alternative programming to in-person clinicals for two years because of COVID-19 even before Mayo Clinic adopted its vaccine policy. But this difference is immaterial to the district court's analysis of Ellis' claim and Defendants' summary judgment motion because the *Thoms* court found those alternative programs did not alleviate the substantial burden Maricopa College's policy placed (although perhaps indirectly) on the plaintiffs' exercise of their religion. 2021 WL 5162538, at *6. And Flint Hills did not argue in its summary judgment motion that it had offered Ellis alternative programming which would alleviate the substantial burden on her religious beliefs, like Maricopa College argued.

As with Arizona's Act, under KPFRA, Flint Hills could excuse the burden Ellis alleges it placed on the exercise of her religion if it demonstrated, by clear and convincing evidence, that burden was "in furtherance of a compelling governmental interest" and was "the least restrictive means of furthering that compelling governmental interest." K.S.A. 2023 Supp. 60-5303(a)(1)-(a)(2). But Defendants did not make this argument in their summary judgment motion. Nor could we decide it on appeal without the necessary legal or factual record.

11

The district court succumbed to the false dichotomy Defendants presented when it found Ellis had to sue Newman. Just because Ellis could have asserted a claim against Newman for its policy does not mean she could not also assert a claim against Defendants for theirs. And since the record was not developed in the district court regarding Ellis' KPRFA claim against Defendants, we cannot address that claim here. Defendants made no arguments in their summary judgment motion (or on appeal) as to whether Flint Hills' actions in response to or in application of Newman's policy substantially burdened Ellis' religious exercise, nor did the district court make any findings on this claim. For these reasons, we find the district court erred when it granted Defendants summary judgment on Ellis' KPRFA claim because she did not sue Newman.

D. *The district court incorrectly determined Ellis' KPRFA claim is unripe, because Defendants unequivocally informed Ellis that she needed to receive the COVID-19 vaccine or she would receive failing grades.*

Judicial power is limited "to actual cases and controversies." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008). A claim is ripe when "no additional facts need to arise or be developed in the record . . . ." *Solomon v. State*, 303 Kan. 512, 522, 364 P.3d 536 (2015). "To be ripe, issues must have taken shape and be concrete rather than hypothetical or abstract." *KNEA v. State*, 305 Kan. 739, Syl. ¶ 3, 387 P.3d 795 (2017).

Defendants contend Ellis' claim is unripe because she never submitted a religious exemption application for the COVID-19 vaccine to Newman. They allege Flint Hills instructed "Ellis that she needed to request a religious exemption directly from the hospital." They contend that Ellis' "refusal to seek a religious accommodation from the hospital makes her claim purely speculative in nature, and is fatal to her cause of action" because "we can never know whether the hospital would have refused her a religious accommodation and chosen to enforce its Covid-19 vaccination requirement policy

12

against her despite her religious beliefs." The district court agreed with Defendants' argument and found Ellis' KPRFA claim unripe.

The problem with Defendants' argument is it is based on a false narrative. Defendants cite no location in the record where Flint Hills directed Ellis to apply for a religious exemption from Newman nor does the record show Newman was even accepting such applications.

At most, the record shows that Flint Hills told Ellis:  "If you are able to get a written accommodation from Newman Regional Health, we will be supportive of that, but we do not have the authority to grant that accommodation." But Defendants do not cite this comment in support of their statement. Defendants also ignore their own repeated statements to Ellis that Newman was not accepting exemptions and Newman's own letter stating they were not accepting them. Although Defendants now claim Ellis' application "would have been fairly considered on its merits," Ellis was never told Newman established an application process for COVID-19 vaccine exemptions or that Newman would even consider her exemption. She was simply told that if she managed to get a written accommodation from Newman *then* Defendants would support that.

Whether Ellis could obtain a religious exemption from Newman was not a contingency which legitimately prevented Ellis' claim against Defendants from ripening. See *Baker v. Hayden*, 313 Kan. 667, 672, 490 P.3d 1164 (2021) (A ripe claim must have "taken fixed and final shape rather than remaining nebulous and contingent."). Ellis was persistently told by multiple people at Flint Hills that she could not receive an exemption and Flint Hills sent her a letter from Newman which unequivocally stated:  Newman "is only able to accept students within your program who are vaccinated against COVID-19 and who can provide proof of vaccination." The letter unambiguously informed Flint Hills, and by implication Ellis, that she could only participate in her clinic coursework if she was vaccinated.

13

Defendants unfairly criticize Ellis for not seeking an exemption from Newman when McNeese's and Newman's statements discouraged her from doing that very thing. And they unfairly elevate the requirements for a claim to ripen by suggesting the only solution to Ellis' predicament was for her to test Newman's resolve in enforcing its stated mandatory policy. Any failure by Ellis to essentially "double check" with Newman to see if Newman *may* give her a written accommodation does not render her KPRFA claim unripe.

It is also wrong for Defendants to argue Ellis' claim is unripe because "she never actually received bad grades." Again, Defendants fail to appreciate or acknowledge the full context of this case. McNeese told Ellis that if she did not comply with Newman's vaccination requirements, "you will not be able to attend and your grade will result in a zero for the day, and subsequent days without the vaccination." And at the preliminary injunction hearing, the district court stated, "The issue today is simply to stop the Fs and get incompletes, which allows [Ellis] time to work through this without—you know, to stop any further damage." Last, the district court ordered Defendants to revise Ellis' academic record to reflect incomplete grades rather than failing grades for all past or future in-person clinicals scheduled at Newman or Presbyterian Manor. Ellis is correct that Defendants have presented no factual support for their contention that, absent Ellis' action in filing the lawsuit and obtaining the injunction, she would have been able to successfully complete Flint Hills' nursing program.

Defendants identify no material facts that need to be developed to determine Ellis' KPRFA claim that their actions—not Newman's—substantially burdened her religious exercise. The district court's analysis was flawed when it found Ellis' KPRFA claim unripe.

14

E. *We need not address Defendants' arguments that Ellis' KPRFA claim is moot.*

Besides claiming Ellis sued the wrong party and her KPRFA claim is unripe, Defendants argue the claim is moot. They believe "[t]here is no relief that could be provided by the" district court to Ellis because she graduated from Flint Hills without delay. But the district court did not make any findings that Ellis' KPRFA claim was moot. In fact, the court acknowledged at the summary judgment hearing that it had entered an injunction in Ellis' favor which prohibited Defendants from flunking Ellis or dismissing her from the program based on her religious beliefs, instead requiring them to give Ellis incomplete grades and giving the parties a chance to try to resolve matters.

While we can determine this issue on appeal, since we review summary judgment decisions de novo, we decline to do so. Because we are reversing the district court's decision granting summary judgment on Ellis' KPRFA claim we believe it would not be prudent to decide this issue at this juncture and on this record. Therefore, this issue remains open for the district court to consider on remand.

F. *We reverse the district court's summary judgment decision.*

Defendants failed to present the necessary facts and legal arguments to establish they were entitled to judgment as a matter of law on Ellis' KPRFA claim against them. For these reasons, we find summary judgment was improvidently granted. We reverse that decision and remand the claim for further proceedings to address whether Defendants' actions substantially burdened Ellis' religious exercise. Since Defendants made no arguments addressing their actions towards Ellis in response to Newman's policy, we offer no opinion on that claim. We also offer no opinion on whether Ellis is entitled to her attorney fees under KPRFA for succeeding in obtaining a temporary injunction since that matter is not before us.

II. *Ellis' Kansas Consumer Protection Act claim*

Earlier in the case, the district court dismissed Ellis' KCPA claim without prejudice on the grounds that KCPA claims are covered by the KTCA, and Ellis had not provided pre-suit notice of the claim as required by K.S.A. 12-105b. When Ellis moved to reassert this claim after she provided notice, Defendants opposed her efforts on the basis of bad faith and futility. They also noted Ellis filed her motion prematurely since the statutory deadline for Defendants to respond to Ellis' notice of claim had not yet run.

Ellis' motion to amend to add or reinstate her KCPA claim was heard at the same time as Defendants' motion for summary judgment. The district court denied the motion to amend because "based upon the facts of the case and the stipulated facts . . . there's not sufficient grounds to allow the continuation of the claim for adding a claim for a Consumer Protection Act Violation . . . ."

Ellis claims she is appealing the district court's dismissal of her KCPA claim instead of its denial of her motion to amend to add that claim. The problem with this position is the dismissal order was an interlocutory or intermediate decision while the denial of the motion to add or reinstate was a final one. And since Ellis did not seek (or receive) permission to take an interlocutory appeal from the dismissal of her KCPA claim, we have no jurisdiction over that decision.

We do not have discretionary power to entertain appeals from all district court orders; our jurisdiction is defined by statute. And in civil cases, our appellate jurisdiction generally extends only to final decisions which dispose of the entire action. *Goldman v. University of Kansas*, 52 Kan. App. 2d 222, 228, 365 P.3d 435 (2015); see K.S.A. 60-2012(a)(4). The dismissal of Ellis' KCPA claim is not included in the list of statutory categories allowing for an appeal as a matter of right in K.S.A. 60-2012(a)(1)-(3) nor does it qualify as a "final decision" under (a)(4). In that context, a final decision is "one

which finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court." *State ex rel. Board of Healing Arts v. Beyrle*, 262 Kan. 507, Syl. ¶ 2, 941 P.2d 371 (1997).

The district court's decision to grant Defendants' summary judgment motion and deny Ellis' motion to add or reinstate qualifies as a final decision, but its decision to dismiss Ellis' KCPA claim without prejudice did not. Parties cannot cherry-pick which decisions they wish to appeal, selecting the ones which best suit their legal strategy or position. Instead, our Legislature limited civil appeals to certain circumstances as part of its desire to reduce the chances of piecemeal appeals. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 610, 244 P.3d 642 (2010).

Ellis does not address the district court's decision to deny her motion to add or reinstate her KCPA claim, nor does she mention its holding that her KCPA claim should not be allowed on the basis of futility. We therefore find Ellis has waived any objection to the court's final decision on her KCPA claim because issues not adequately addressed in briefing are treated as waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). For these reasons, we affirm the court's decision to deny Ellis' motion to add or reinstate her KCPA claim. That said, this decision should not be construed, by implication or otherwise, to support the district court's opinion that the KTCA applies to KCPA claims.

ELLIS' MOTION FOR ATTORNEY FEES ON APPEAL

In addition to declaratory and injunctive relief, Ellis also sought attorney fees under KPRFA in her petition. The district court did not have an opportunity to review her attorney fee claim—in total or for Ellis' pursuit of a temporary injunction—since it granted Defendants' motion for summary judgment. For this reason, we find Ellis' claim under KPRFA for attorney fees in the district court is not ripe for our review. Since we

17

are reversing that summary judgment decision, this claim can be addressed by the district court along with her claim for other relief under KPRFA. See *Johnson v. Board of Directors of Forest Lakes Master Assn.*, 61 Kan. App. 2d 386, 406, 503 P.3d 1038 (2021) (finding Kansas law allows a plaintiff to move for attorney fees postjudgment).

Ellis also filed a motion for attorney fees under Rule 7.07 for services on appeal. Defendants do not dispute the amount of fees Ellis seeks but, instead, attack this court's authority to award them. Defendants argue we cannot award Ellis' fees on appeal because she did not succeed before the district court, and she did not file a motion for attorney fees in that court. They also contend we should not award Ellis fees on appeal because they generally disagree with arguments Ellis made on appeal.

I. *This court has authority to award Ellis attorney fees on appeal.*

To begin, we do not find Defendants' disagreement with Ellis' arguments on appeal to be a persuasive or sufficient reason to deny Ellis' requests for attorney fees on appeal. For one, Defendants contend Ellis misrepresented the factual record on appeal in an attempt to create a factual dispute sufficient to reverse the district court's summary judgment decision. But we do not read Ellis' briefs that way. Ellis does not dispute the facts Defendants set forth in their motion for summary judgment—she disputes findings by the district court which were not supported by those facts as well as the court's legal conclusions about her KPRFA claim.

Next, Defendants unfairly accuse Ellis of failing to preserve her attorney fee claim because she did not request fees from the district court. But the fees Ellis is seeking from us were incurred in prosecuting her appeal, not for prosecuting her claim for a temporary injunction or any other claim before the district court. We offer no opinion on whether Ellis is entitled to an award of attorney fees for her efforts in the district court and leave

18

that decision to that court on remand. We only answer the limited question of whether Ellis is entitled to her fees for prosecuting this appeal.

Finally, although Ellis did not succeed on her KCPA claim, we have authority to award her attorney fees under KPRFA because Ellis has persuaded us to reverse the district court's summary judgment decision on that claim. Defendants do not dispute that a court may grant attorney fees under KPRFA. See K.S.A. 2023 Supp. 60-5303(b). And an appellate court may apportion appellate fees and expenses as justice requires and award attorney fees when "*the district court had authority to award attorney fees.*" (Emphasis added.) Supreme Court Rule 7.07(a)(4), (b)(1) (2024 Kan. S. Ct. R. at 52). Since the district court has authority to award Ellis attorney fees on her KPRFA claim on remand, we have authority to award her fees on appeal. And while the language of KPRFA does not require a finding that a party "prevailed" before that party can be awarded attorney fees under KPRFA, we do find that to the extent Ellis persuaded us to reverse the district court's summary judgment decision on her KPRFA claim, she has prevailed on appeal. See S*nider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 166, 298 P.3d 1120 (2013).

While we do not know whether Ellis will ultimately prevail on her KPRFA claim in the district court, we cannot remand her request for attorney fees on appeal since our Supreme Court mandated in *Evans v. Provident Life & Accident Ins. Co.*, 249 Kan. 248, 265, 815 P.2d 550 (1991), that "[c]ivil appellate attorney fee awards are to be determined by the appellate court hearing the appeal. Motions for attorney fees incurred before the Court of Appeals should be determined by the Court of Appeals." In analyzing Rule 7.07, our Supreme Court has said:

> "In an appellate setting, the Rule 7.07(b) time limit for filing a motion for attorney fees allows the appellate court to contemplate the request and, if appropriate, determine the reasonable amount of the fee while the matter is fresh in the minds of the

19

judges or justices and to perhaps address the motion in the appellate court's opinion. The orderly administration of justice would not be advanced if an appellate court is asked to revisit a published case to consider a request for appellate attorney fees. Nor would it be advanced by requiring a district judge, who would not have read the appellate briefs, heard the oral argument, or fully considered the appeal, to take those steps as necessary to be fully informed regarding the reasonableness of a request for appellate attorney fees, only to potentially have that determination reviewed on appeal, at least in those cases where the appeal determines which party prevails in the action." *Snider*, 297 Kan. at 167 (citing *Olsen v. Olsen*, 7 Kan. App. 2d 472, 475-76, 643 P.2d 1153 [1982]).

And since appellate courts are considered experts in the realm of appellate attorney fees and have broad discretion to assess the reasonableness of the fees requested, we can assess Ellis' request for fees on appeal. See *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940-41, 135 P.3d 1127 (2006).

II. *We find Ellis' attorney fees to be reasonable under both the lodestar analysis and in applying the factors in KRPC 1.5.*

When a party requests attorney fees on appeal, courts are charged with determining whether the fees sought are "reasonable." See *Johnson*, 281 Kan. at 940-41. A party requesting attorney fees must file a motion and attach an affidavit explaining the nature and extent of the services, as well as the time spent on the appeal, and applying the eight factors contained in KRPC 1.5 (2024 Kan. S. Ct. R. at 330). Supreme Court Rule 7.07(b)(2) (2024 Kan. S. Ct. R. at 52). Ellis complied with these requirements in her motion for attorney fees on appeal.

Determining the reasonableness of a fee request generally starts with a two-part inquiry—assessing both the reasonableness of the attorney's hourly rate and the reasonableness of the time spent representing the client's interests. See *Hatfield v. Wal-Mart Stores, Inc.*, 14 Kan. App. 2d 193, 199, 786 P.2d 618 (1990). Courts have traditionally described this inquiry as a "'lodestar calculation.'" *Doan Family Corp. v.*

20

*Arnberger*, 62 Kan. App. 2d 769, 785, 522 P.3d 364 (2022); see also *Citizens Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 47 Kan. App. 2d 1112, 1125-27, 284 P.3d 348 (2012) (discussing and applying the lodestar method). The lodestar calculation may be adjusted upward or downward based on the factors set forth in KRPC 1.5(a), which include:

> "'(1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> "'(2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> "'(3)  the fee customarily charged in the locality for similar legal services;
> "'(4)  the amount involved and the results obtained;
> "'(5)  the time limitations imposed by the client or by the circumstances;
> "'(6)  the nature and length of the professional relationship with the client;
> "'(7)  the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> "'(8)  whether the fee is fixed or contingent.'" *Johnson*, 281 Kan. at 940-41.

A. *Reasonable hourly rate*

Both the lodestar analysis and KRPC 1.5(a)(3) require us to consider whether the hourly rate Ellis' counsel (Baker) charged was reasonable. Defendants make no argument on this point, so we presume they agree that Baker's hourly rate of $400 is reasonable. And we note the hourly rate is in line with this court's knowledge of rates charged in the locality where Baker practices, based on other fee requests we have seen.

We also find Baker's hourly rate of $400 to be reasonable based on his credentials and the contingency-fee nature of his representation. See KRPC 1.5(a)(8) (directing that we consider whether the fee is fixed or contingent). And we note the similar finding made by Judge Teeter on this issue in *Gilmore v. Beveridge*, No. 2:22-CV-02032-HLT, 2024

21

WL 1461813, at *2 (D. Kan. 2024) (unpublished opinion), which Ellis referenced in her motion.

B. *Reasonable number of hours*

We next look at the hours Baker spent prosecuting this appeal to determine whether they were reasonable. We note Defendants do not argue the 45.5 hours Baker claims to have spent on Ellis' appeal was an unreasonable amount of time, nor do we find it unreasonable after examining the detailed billing records Baker submitted.

C. *Application of KRPC 1.5(a) factors*

Defendants do not address the effect of the KRPC 1.5(a) factors on Ellis' fee request, other than to make a generic statement that the factors "do not warrant the award Ellis seeks." We therefore find Defendants have waived any argument on this issue for their failure to brief it. See *Gallegos*, 313 Kan. at 277. At any rate, we find application of these factors generally supports Ellis' request and the lodestar calculation of the amount to be awarded.

To begin, KRPC 1.5(a) directs us to look at "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." KRPC 1.5(a)(1) (2024 Kan. S. Ct. R. at 330). Given the novelty and difficulty of the legal and factual issues involved in pursuing a KPRFA case—especially given that we have little published caselaw on the Act—we agree with Ellis that this factor supports awarding her requested fees on appeal. And as noted above, we also find the time expended in prosecuting this appeal was reasonable.

Ellis also persuasively argues the impact taking this case had on Baker's law practice supports her fee request. KRPC 1.5(a)(2) (2024 Kan. S. Ct. R. at 330) requires us

to consider "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer." Baker states he is a solo practitioner with no staff, who could not perform work for other clients or on other cases while doing so.

Next, we consider the amount involved and the results obtained as well as the fact that Baker took this case on a contingency basis. See KRPC 1.5(a)(4), (a)(8). KPRFA claims are no different from other civil rights claims where the client's recoverable damages are often not monetary or even monetarily measured. If this court does not compensate attorneys who successfully protect their clients' civil rights when the law provides us the authority to do so, attorneys will not take on such cases because they will not be able to afford to do so. It is unfair to burden civil rights attorneys with the cost of such enforcement especially when those victories reverberate throughout society. Similarly, if we do not award fees for succeeding in overturning erroneous district court decisions on appeal, we undercut the purpose of the Legislature's inclusion of attorney fees in the type of relief that can be awarded under KPRFA. Therefore we find this factor also supports Ellis' request for fees on appeal.

As for the remaining factors, we have already determined the hourly rate of $400 was reasonable for the locality where Baker practices and considering his legal experience and abilities. See KRPC 1.5(a)(3), (a)(7). We find the factor regarding "the nature and length of the professional relationship with the client" to be neutral because Baker states he had no relationship with Ellis before this matter. See KRPC 1.5(a)(6) (2024 Kan. S. Ct. R. at 330). And we find the last factor—"the time limitations imposed by the client or by the circumstances"—does not support any adjustment to the lodestar calculation because Ellis does not address how this factor impacts her fee request on appeal. See KRPC 1.5(a)(5) (2024 Kan. S. Ct. R. at 330). Instead, she addresses the time constraints imposed by her need to seek a preliminary injunction before the district court.

23

Since we are not addressing whether Ellis is entitled to attorney fees for the district court proceedings, this factor does not impact our decision.

To conclude, we find both the lodestar calculation and application of the KRPC 1.5(a) factors generally support Ellis' request for attorney fees on appeal. We therefore award Ellis her requested fees for prosecuting this appeal in the amount of $18,200 under Rule 7.07(b). Since we are reversing the district court's summary judgment decision on Ellis' KPRFA claim, we also award Ellis her docketing fee of $145 under Rule 7.07(a)(4), (a)(5).

CONCLUSION

For the reasons stated above, we affirm the district court's decision on Ellis' motion to add or reinstate a KCPA claim, and we reverse the district court's summary judgment decision on her KPRFA claim. We also grant Ellis' request for attorney fees and costs on appeal and remand the case for further proceedings on her KPRFA claim.

Affirmed in part, reversed in part, and remanded with directions.

\* \* \*

ARNOLD-BURGER, C.J., concurring:  As the parties conceded at oral argument, at this juncture, this case is about attorney fees.

The stripped-down facts are as follows:

When the Flint Hills Technical College accepted Molly Ellis into its practical nursing program, it agreed to provide her the necessary instruction to allow her to become a practical nurse. The Board of Nursing requires that approved nursing programs

24

provide a clinical experience for its students. See K.A.R. 60-2-104. The program must have "adequate clinical and educational facilities to meet student learning outcomes." K.A.R. 60-1-102(f). In compliance with this requirement, the Flint Hills program requires completion of a clinical experience. It has contracted with several entities to provide those services:  Newman Regional Health, Emporia Presbyterian Manor, Holiday Resort, and Stormont Vail Health.

When Ellis began the program, she made no secret of her personal religious beliefs regarding vaccinations and their use of fetal tissue. Flint Hills recognized those beliefs and gave her at least a de facto waiver from their vaccination requirement to allow her to continue in the program. When the COVID-19 pandemic began, the major entity providing clinical opportunities was Newman Regional Health Center. At the beginning of the pandemic it stopped allowing any nursing students to complete clinicals there unless they were vaccinated against the COVID-19 virus. Ellis sought a religious exemption from her nursing program, Flint Hills, and was denied. She was told that if she did not get vaccinated, she would not be able to complete her clinical assignments. When she failed to get vaccinated, she was given zeros for each clinical assignment missed. Three zeros would result in a failure and thus an inability to complete the program.

Within a couple days of being provided this information, and before Ellis had her third zero for missed clinicals, Ellis filed this action for enforcement of her rights under the Kansas Preservation of Religious Freedom Act (KPRFA), K.S.A. 60-5301 et seq., seeking injunctive and declaratory relief and attorney fees. The court granted the preliminary injunction and ordered Flint Hills to enter her grade as an incomplete to give the parties a chance to enter settlement negotiations. The court specifically stated that it was not requiring that the clinical facilities participate in the negotiations and made it clear this was a Flint Hills issue, and Newman was not a party to the case. Shortly thereafter, Flint Hills changed its policy to allow for religious exemptions and Ellis completed her clinicals.

25

Well over a year later, the district court granted summary judgment to Flint Hills on the grounds that the issue was not ripe because Ellis did not request a religious exemption from Newman, and Ellis sued the wrong party—she should have sued Newman. Today we find that the district court's summary judgment order was in error, and we reverse it and return it to the district court to make a determination on the merits—whether Flint Hills substantially burdened Ellis' religious exercise contrary to KPRFA and whether her success on the temporary injunction request is sufficient to order that she be reimbursed her attorney fees.

But after argument in this case, Ellis requested appellate attorney fees. I agree with the majority that she is entitled to attorney fees on appeal under these facts. Flint Hills contends that because Ellis has not prevailed in the district court and her claims are unviable and untruthful, appellate fees are barred. In other words, because summary judgment was properly granted by the district court, she is not entitled to attorney fees. Flint Hills fails to take into account her entitlement to attorney fees if she prevails on appeal. She has now prevailed on appeal. And Flint Hills presents absolutely no caselaw to support its position that she is barred from an award of appellate attorney fees. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

I part ways with my colleagues only insofar as I do not think it is necessary or advisable for us to go through a lodestar and KRPC analysis and declare $400 per hour and over $18,000 in appellate attorney fees reasonable, when the majority concedes there is no dispute regarding the amount of attorney fees. Flint Hills does not object to the amount of the fees, only whether we have the authority to assess them. We do. Moreover, I do not find Mr. Baker's billing records as clear as the majority. For example, he does not distinguish between the time he spent on the portions of this appeal that were successful and those that were not (KCPA claim), which makes it impossible for me to

conclude the reasonableness of the fees for the sole issue upon which he prevails. But we do not need to do that, because Flint Hills presents no challenge to the amount. I would find the failure to object to the amount of the fee to be dispositive as to the amount. Accordingly, I do not join in the reasonableness finding by the majority, although I do concur that the attorney fee award requested should be awarded.